WEBSTER BANK *v.* JOANNA V. ZAK ET AL.
(SC 16489)

Borden, Norcott, Katz, Vertefeuille and West, Js.

Argued January 15—officially released March 26, 2002

*Kerry M. Wisser*, with whom was *Nathan A. Schatz*, for the appellant (defendant MFR of East Hampton, LLC).

*Jeffrey T. Beatty*, with whom, on the brief, was *Richard J. Beatty*, for the appellee (substitute plaintiff EMC Mortgage Corporation).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court properly reversed the judgment of the trial court and remanded the case to that court for factual findings regarding the standing of the defendant MFR of East Hampton, LLC (MFR), as the successor in interest to certain real property that was the subject of a foreclosure action. We reverse the judgment of the Appellate Court.

The record reveals the following undisputed facts and procedural history. On July 16, 1997, the plaintiff, Webster Bank (bank), brought an action seeking to foreclose a mortgage on three parcels of land in Clinton, of which the named defendant, Joanna V. Zak (Zak), was the titleholder of record.[1] On November 24, 1997,

---

[1] Also included as defendants in the bank's foreclosure action were Kenneth A. Zak, an original mortgagor of the property who had since transferred his interest to Zak, and the following parties, all of which claimed some interest in the mortgaged property: GTT Corporation, as trustee of Oregon Properties Realty Trust (GTT); Jonathan Googel; Stephen J. Dellaquila; New Haven Savings Bank; Ferndale Condominium Association, Inc.; Boston Safe Deposit and Trust Company; the state of Connecticut; and the United States of America. The trial court subsequently granted motions to cite in MFR,

the trial court, *Arena, J.*, rendered a judgment of foreclosure by sale. After determining the amount of the debt due on the note and the costs associated with the foreclosure action, the court scheduled the sale date for July 18, 1998.

The bank subsequently assigned its interest in the note and mortgage to EMC Mortgage Corporation (EMC). Thereafter, EMC moved to substitute itself as the plaintiff in the foreclosure action and Zak moved to extend the foreclosure sale date. On July 13, 1998, the trial court granted both motions.[2] The court also opened the November 24, 1997 judgment and rendered a new judgment of foreclosure by sale with a sale date of September 19, 1998.

On September 17, 1998, Zak filed in the United States Bankruptcy Court for the District of Connecticut for protection under chapter 13 of the United States Bankruptcy Code, which was later converted to a chapter 7 bankruptcy. See 11 U.S.C. § 101 et seq. The filing of the bankruptcy petition stayed the trial court proceedings, and the foreclosure sale did not occur as scheduled.[3] Thereafter, EMC filed in the Bankruptcy Court a motion for relief from the bankruptcy stay. On January 5, 1999, the Bankruptcy Court granted EMC's motion for relief from the stay on the condition that Tracy M. Saxe, the trustee of Zak's bankruptcy estate, be cited in as a party defendant in the foreclosure action. EMC subsequently moved in the trial court to open the judgment of foreclosure and to amend the complaint to cite in Saxe as a

Zak's successor in interest to the property, and Tracy M. Saxe, the trustee of Zak's bankruptcy estate, as defendants and a motion to substitute Donald Mondani as a defendant for GTT.

[2] EMC is the only plaintiff in this certified appeal.

[3] Pursuant to § 362 of the United States Bankruptcy Code, the filing of a bankruptcy petition creates an automatic stay of execution against the commencement or continuation of all actions against the debtor that were, or could have been, filed against the debtor prior to the bankruptcy filing. See 11 U.S.C. § 362.

party defendant. On February 8, 1999, the trial court opened the judgment and granted EMC's motion to file an amended complaint. EMC subsequently filed an amended complaint naming Saxe as a party defendant.

On March 31, 1999, Zak conveyed all of her right, title and interest, including her equity of redemption, in the foreclosed property to MFR by quitclaim deed. Saxe was not a signatory to the deed. Thereafter, MFR moved to be cited in as a party defendant, pursuant to General Statutes § 52-107 and Practice Book § 9-6, claiming that it was "the record titleholder of the property that is the subject of the foreclosure, and any judgment of foreclosure will necessarily affect it by foreclosing out its interest as the titleholder . . . ."[4] MFR furnished a copy of the quitclaim deed in support of its motion. On May 4, 1999, without objection from EMC or Saxe, the trial court granted MFR's motion. EMC subsequently filed a second amended complaint in which it named MFR as a party defendant, stating: "By her Quitclaim Deed dated March 31, 1999, and recorded April 1, 1999 . . . on the Clinton Land Records, [Zak] conveyed her interest in the mortgaged premises to [MFR]." MFR is the only defendant involved in this certified appeal.

MFR filed an answer and special defense to EMC's second amended complaint. In its special defense, MFR claimed that EMC's failure to provide the appropriate notice of default pursuant to the requirements of the mortgage agreement barred it from instituting foreclosure proceedings. No other party filed a pleading in response to EMC's second amended complaint.

[4] General Statutes § 52-107 provides in relevant part: "If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

Practice Book § 9-6 provides: "Any person may be made a defendant who has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or whom it is necessary, for a complete determination or settlement of any question involved therein, to make a party."

On October 8, 1999, EMC filed a motion for summary judgment. EMC claimed that MFR was bound by the trial court's November 24, 1997 judgment as Zak's successor in interest, and was precluded, therefore, from asserting new defenses to liability that Zak had not asserted prior to that judgment. Similarly, EMC contended that MFR was bound by the amount of the mortgage debt as determined by the trial court in connection with that judgment. MFR opposed the motion for summary judgment as to both the issue of liability and the amount of the debt. On February 8, 2000, the trial court granted summary judgment on the issue of liability, and scheduled a hearing on the amount of the debt for May 31, 2000.

At that hearing, EMC claimed that the trial court should calculate the amount by adding to the debt established at the November 24, 1997 judgment the per diem interest that had accrued on that debt since that date. MFR contended, in response, that EMC's second amended complaint citing in MFR opened the pleadings and, thereby allowed MFR to assert new defenses to liability, as well as to contest the amount of the debt established by the trial court's November 24, 1997 judgment. Therefore, MFR claimed, the court should hear evidence regarding the amount of the debt.

In its memorandum of decision, dated June 5, 2000, the trial court determined that "each opening of the original judgment of foreclosure, dated November [24], 1997, was for a limited purpose: on July 13, 1998, to substitute EMC as successor plaintiff to [the bank]; on July [13], 1998, to set a new sale date of September 19, 1998; on February 8, 199[9], to cite in [Saxe] as trustee of the bankruptcy estate of [Zak]." It further determined that "[n]othing in the record indicates that the judgment of foreclosure by sale was ever vacated." The court concluded "that the debt established by the judgment

of November [24], 1997, is [therefore] the controlling debt in this [foreclosure] action."

Following its discussion of the merits, the trial court questioned MFR's standing in the action as the successor to Zak's interest. In particular, the court questioned whether Zak had the authority to convey any interest in the property to MFR by quitclaim deed in March, 1999, when the property had become part of Zak's bankruptcy estate following her petition for bankruptcy in September, 1998.[5] Additionally, the court noted that, although Saxe, as the trustee of Zak's bankruptcy estate, had authority to convey the property to MFR, there was no evidence presented, nor any indication in the record, that Saxe had, in fact, done so. Despite its apparent concern regarding the legitimacy of MFR's title, the trial court rendered a judgment of foreclosure by sale, and calculated the amount of the debt using the amount of the debt established at the November 24, 1997 judgment and adding the per diem interest that had accrued since that date.

MFR appealed from the trial court's judgment of foreclosure to the Appellate Court, claiming that the trial court had improperly concluded that the amount of debt established in the November 24, 1997 judgment was the controlling debt in the foreclosure action. No party contested MFR's standing to appeal. On January 16, 2001, without reaching the merits of MFR's appeal, the Appellate Court, sua sponte, reversed and remanded the case to the trial court "for the purpose of making factual findings to determine whether the defendant

---

[5] Specifically, the trial court stated: "The court is troubled by the presence of the defendant MFR in this case. MFR claims standing as a grantee of the defendant [Zak]. However, at the time of the quitclaim deed of Zak to MFR, [Saxe] had appeared in this matter as trustee in bankruptcy as to the bankruptcy estate of Zak. No evidence was presented to the court and there is nothing in the record to indicate [that] Saxe, as trustee, conveyed any interest to MFR. The court questions the standing of MFR in this case."

[MFR] has standing to assert its claim to an interest in the property under foreclosure and to otherwise participate in the proceedings." *Webster Bank* v. *Zak*, 61 Conn. App. 402, 403, 763 A.2d 1090 (2001).

MFR subsequently filed a petition for certification to appeal to this court, which we granted, limited to the following issue: "Did the Appellate Court properly reverse the judgment of the trial court and remand the case for factual findings regarding the standing of the defendant MFR of East Hampton, LLC?" *Webster Bank* v. *Zak*, 255 Conn. 946, 769 A.2d 61 (2001). This appeal followed. We conclude that, although the Appellate Court was required to address any questions regarding the standing of the parties before it, its decision to reverse the judgment of the trial court and to remand the case to that court for further findings regarding MFR's standing was improper.

Before addressing the substantive issue in this appeal, we address briefly the scope of our review. The facts underlying MFR's appeal from the judgment of the trial court are undisputed. Therefore, the implicit conclusion of the Appellate Court that the record was insufficient for a determination that MFR had standing to participate in the foreclosure action involves a question of law, subject to plenary review. See *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 565, 775 A.2d 284 (2001) (conclusions based on undisputed facts are conclusions of law, over which our review is plenary); *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000) (recognizing that plenary review applies to questions of law). Thus, "[w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct"; (internal quotation marks omitted) *In re David W.*, 254 Conn. 676, 686, 759 A.2d 89 (2000); and whether they "find support in the facts that appear

in the record." (Internal quotation marks omitted.) *Powers* v. *Olson*, 252 Conn. 98, 105, 742 A.2d 799 (2000).

We begin our analysis by underscoring that a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. *Ramos* v. *Vernon*, 254 Conn. 799, 808, 761 A.2d 705 (2000). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347, 780 A.2d 98 (2001). "This court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time." *Daley* v. *Hartford*, 215 Conn. 14, 27–28, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990). "[T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear." *Sasso* v. *Aleshin*, 197 Conn. 87, 89, 495 A.2d 1066 (1985). Moreover, "[t]he parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent." *Sadloski* v. *Manchester*, 228 Conn. 79, 83, 634 A.2d 888 (1993), on appeal after remand, 235 Conn. 637, 668 A.2d 1314 (1995). "Standing [however] is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *Harris* v.

*New Milford,* 259 Conn. 402, 409–10, 788 A.2d 1239 (2002).

On appeal, MFR contends that a remand to the trial court for the purpose of making factual findings regarding MFR's standing as Zak's successor in interest is unnecessary because MFR had made the requisite showing of "a legal or equitable right, title or interest in the subject matter of the [foreclosure action]"; (internal quotation marks omitted) *Ganim* v. *Smith & Wesson Corp.,* supra, 258 Conn. 347; to establish standing in the trial court. We agree.

In the trial court, MFR moved, pursuant to § 52-107; see footnote 4 of this opinion; to be cited in as a party defendant as the owner of the equity of redemption in the foreclosed property. Section 52-107 provides in relevant part that "[i]f a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party." In *Washington Trust Co.* v. *Smith,* 241 Conn. 734, 699 A.2d 73 (1997), this court had occasion to consider the showing required for a party seeking to establish a sufficient interest or title in the property that the judgment would affect for purposes of intervening in a foreclosure action. This court stated that "[a] proposed intervenor must allege sufficient facts, through the submitted motion and pleadings, if any, in order to make a showing of his or her right to intervene. The inquiry is whether the claims contained in the motion, if true, establish that the proposed intervenor has a direct and immediate interest that will be affected by the judgment." Id., 747. Thereafter, we concluded in *Washington Trust Co.* that John Holstein, trustee of City Discount Oil Nominee Trust (Holstein), a proposed intervening defendant who was the owner of the equity of redemption in the property that was the subject of the foreclosure action, had alleged sufficient facts to support his motion to intervene. Id., 736, 748. Holstein

had moved to intervene for the purpose of protecting his interest in the foreclosed property following the trial court's judgment of foreclosure by sale on the property, but prior to its confirmation of the sale. Id., 738. In his motion to intervene, Holstein had "alleged that he [had] purchased the equity of redemption from the owner of the property subject to foreclosure and that he wanted to redeem the mortgage." Id., 748. In addition, this court noted that, "although unnecessary, but prudent, Holstein's motion was supported by documentation corroborating his interest in the foreclosed property . . . ." Id., 748 n.9. In reversing the Appellate Court's decision that had affirmed the trial court's denial of Holstein's motion to intervene, this court stated that "the burden of proving [an interest in the foreclosure action], *by way of testimony or other evidence*, in order to be allowed to intervene . . . is too high a hurdle for purposes of establishing a right to intervene." (Emphasis in original.) Id., 747. The court concluded that "Holstein [was] entitled to prove [his] interests, if any, as [a defendant] in the foreclosure action before the foreclosure sale was confirmed, and at that time [the plaintiffs] would have been entitled to dispute the validity of . . . Holstein's interests on the merits." Id., 748. We held, therefore, that Holstein had established the factual predicate for a determination, as a matter of law, that he had standing to intervene because "if true, the allegations in [his motion] . . . would constitute the required [showing] of direct and substantial interests that would be impaired by the foreclosure action." Id.

In the present case, as in *Washington Trust Co.*, MFR alleged in its motion to be cited in as a party defendant that it had purchased the property that was the subject of the foreclosure action and that, consequently, it was the owner of the equity of redemption in the foreclosed property. MFR further alleged that any judgment of

foreclosure would necessarily affect its interest in the property by foreclosing out its interest as the owner of the equity of redemption. Additionally, MFR furnished a copy of the quitclaim deed corroborating its alleged interest in the property. The trial court granted MFR's motion.[6]

After MFR filed its motion to be cited in, EMC had the opportunity to contest the merits of MFR's alleged interest in the mortgaged property. EMC did not do so. To the contrary, EMC filed a second amended complaint naming MFR as a party defendant in the foreclosure action because "[Zak had] conveyed her interest in the mortgaged premises to MFR . . . ." It is well established that "[f]actual allegations contained in pleadings upon which the case is tried are considered judicial admissions"; (internal quotation marks omitted) *Ferreira* v. *Pringle*, 255 Conn. 330, 345, 766 A.2d 400 (2001); which "[dispense] with the production of evidence by the opposing party as to the fact admitted, and [are] conclusive upon the party making [them]." (Internal quotation marks omitted.) *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 695 n.7, 651 A.2d 1286 (1995); see *State* v. *Rodriguez*, 180 Conn. 382, 396, 429 A.2d 919 (1980) ("[t]he vital feature of a judicial admission is universally conceded to be its conclusiveness upon the party making it, i.e. the prohibition of any further dispute of the fact by him, and any use of evidence to disprove or contradict it" [internal quotation marks omitted]). Therefore, by virtue of its second amended complaint, EMC conceded that MFR was the successor in interest to the property that is the subject of the foreclosure action. This concession conclusively established the factual predicate necessary for a deter-

---

[6] Although the trial court's actions are not the subject of our review in this appeal, we note that the trial court properly granted MFR's motion to be cited in as a defendant.

mination, as a matter of law, that MFR had standing to protect its interests in the foreclosure action.

The record further reveals that no other party, either in the trial court or in the Appellate Court, contested MFR's interest in the foreclosed property. Although the trial court questioned MFR's standing in its memorandum of decision, it expressly stated that "Zak, the record owner of the property, conveyed all her right, title and interest in the premise[s] to [MFR]." Because the court thereafter rendered judgment against MFR on the merits, its decision necessarily was predicated on a conclusion that MFR did not lack standing.

EMC claims, however, that the Appellate Court's remand was proper because, following the commencement of the bankruptcy proceedings, the foreclosed property became part of Zak's bankruptcy estate pursuant to § 541 of the United States Bankruptcy Code. 11 U.S.C. § 541. Therefore, according to EMC, Zak did not have the authority to transfer the property to MFR.[7]

---

[7] Section 541 of the United States Bankruptcy Code provides: "(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

"(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

"(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

"(A) under the sole, equal, or joint management and control of the debtor; or

"(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

"(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

"(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

"(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

## As such, EMC contends, only Saxe, as trustee of the

"(A) by bequest, devise, or inheritance;

"(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

"(C) as a beneficiary of a life insurance policy or of a death benefit plan.

"(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

"(7) Any interest in property that the estate acquires after the commencement of the case.

"(b) Property of the estate does not include—

"(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;

"(2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case;

"(3) any eligibility of the debtor to participate in programs authorized under the Higher Education Act of 1965 (20 U.S.C. 1001 et seq.; 42 U.S.C. 2751 et seq.), or any accreditation status or State licensure of the debtor as an educational institution;

"(4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that—

"(A)(i) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement; and

"(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544(a)(3) of this title; or

"(B)(i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and

"(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 542 of this title; or

"(5) any interest in cash or cash equivalents that constitute proceeds of a sale by the debtor of a money order that is made—

"(A) on or after the date that is 14 days prior to the date on which the petition is filed; and

"(B) under an agreement with a money order issuer that prohibits the commingling of such proceeds with property of the debtor (notwithstanding that, contrary to the agreement, the proceeds may have been commingled with property of the debtor), unless the money order issuer had not taken action, prior to the filing of the petition, to require compliance with the

bankruptcy estate, had the authority to transfer the property to MFR. Moreover, EMC asserts, Saxe had the authority to void any transfer made by Zak for two years from the date of Zak's transfer to MFR pursuant to § 549 of the United States Bankruptcy Code.[8] At the time of the proceedings in the Appellate Court, the two year time period had not yet expired. Therefore, EMC

---

prohibition.

"Paragraph (4) shall not be construed to exclude from the estate any consideration the debtor retains, receives, or is entitled to receive for transferring an interest in liquid or gaseous hydrocarbons pursuant to a farmout agreement.

"(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

"(A) that restricts or conditions transfer of such interest by the debtor; or

"(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

"(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

"(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541.

[8] Section 549 of the United States Bankruptcy Code provides in relevant part: "(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

"(1) that occurs after the commencement of the case; and

"(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

"(B) that is not authorized under this title or by the court. . . .

"(d) An action or proceeding under this section may not be commenced after the earlier of—

"(1) two years after the date of the transfer sought to be avoided; or

"(2) the time the case is closed or dismissed." 11 U.S.C. § 549.

contends that the Appellate Court's exercise of its discretion to remand the case to the trial court for further findings regarding MFR's standing was appropriate "because the possibility that further proceedings could be taken by [Saxe] remained alive." Although we acknowledge that EMC's assumption about the rationale underlying the Appellate Court's opinion may be accurate, we disagree with its import.

Section 549 (a) of the Bankruptcy Code provides in relevant part that "the trustee [of a bankruptcy estate] may avoid a transfer of property of the estate . . . (1) that occurs after the commencement of the [bankruptcy] case; and (2) . . . (B) that is not authorized under [the Code] or by the court." 11 U.S.C. § 549 (a) (1) and (2) (B). Section 549 (d) provides that such an action by a trustee "may not be commenced after the earlier of . . . (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed." 11 U.S.C. § 549 (d). "Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property." *In re Schwartz*, 954 F.2d 569, 574 (9th Cir. 1992). Accordingly, "[i]n most circumstances, [§] 549 applies to transfers in which the debtor is a willing participant. . . . For example, in a transfer unrelated to any antecedent debt, the debtor may sell a portion of the estate's property to a third person." Id. It is well established that § 549 achieves its purpose, not by rendering postpetition transfers of property by the bankruptcy debtor void, but rather by rendering them *voidable* upon timely action of the trustee. See *In re Home America T.V.-Appliance Audio, Inc.*, 232 F.3d 1046, 1051 (9th Cir. 2000), cert. denied sub nom. *Shaltry* v. *United States*, 534 U.S. 814, 122 S. Ct. 39, 151 L. Ed. 2d 12 (2001); *In re Halabi*, 184 F.3d 1335, 1338 (11th Cir. 1999); *In the Matter of Berryman Products, Inc.*, 159 F.3d 941, 946 (5th Cir. 1998); *In re Pucci Shoes, Inc.*, 120 F.3d 38, 41 (4th Cir. 1997); *In re*

*M & L Business Machine Co.*, 59 F.3d 1078, 1080 (10th Cir. 1995); *In re Nordic Village, Inc.*, 915 F.2d 1049, 1055 (6th Cir. 1990), rev'd on other grounds sub nom. *United States* v. *Nordic Village, Inc.*, 503 U.S. 30, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992); *In re Photo Promotion Associates, Inc.*, 881 F.2d 6, 10 (2d Cir. 1989); *In re Ward*, 837 F.2d 124, 127 (3d Cir. 1988); *In the Matter of Allen*, 816 F.2d 325, 327–28 (7th Cir. 1987); *Smith* v. *Mark Twain National Bank*, 805 F.2d 278, 293 (8th Cir. 1986).

In the present case, it is undisputed that the transfer from Zak to MFR took place following Zak's petition for bankruptcy, and that Saxe was not a signatory to the quitclaim deed transferring Zak's interest in the foreclosed property to MFR. Because the bankruptcy case remained open, however, Saxe had two years from March 31, 1999, the date that Zak quitclaimed her interest in the foreclosed property to MFR, to make a timely objection to that transfer. Saxe never raised an objection to the transfer to MFR, however, although he had been made a party to the foreclosure action and, in that capacity, had been served with a copy of MFR's motion to be cited in as Zak's successor in interest. Nor did Saxe challenge the transfer following EMC's second amended complaint citing in MFR as the titleholder of the foreclosed property or when the trial court expressly questioned MFR's standing as Zak's successor in interest. Thus, twenty-two of the twenty-four months during which Saxe could have avoided the transfer of the property from Zak to MFR had expired without an objection from Saxe, when, on January 16, 2001, the Appellate Court remanded the case for further proceedings regarding MFR's standing, without reaching the merits of MFR's appeal. Finally, we note that Saxe did not object to MFR's presence in the case before the Appellate Court. In the absence of any indication that Saxe intended to take any action to avoid the transfer

in the future, we reject EMC's claim that the Appellate Court's decision remanding MFR's appeal was warranted by the *possibility* that Saxe *might* object to MFR's standing in the last two months prior to the expiration of his right to do so. Finally, we note that, on January 15, 2002, the date of oral argument before this court, the time period during which Saxe could have avoided the transfer had expired.

Our review of the record leads us to conclude that MFR had made the requisite factual showing to establish itself as the successor in interest to Zak as owner of the foreclosed property. In the absence of any evidence of an intent by Saxe to avoid that transfer, we conclude that the Appellate Court improperly reversed the judgment of the trial court and remanded MFR's appeal to that court for factual findings regarding MFR's standing as the owner of the foreclosed property.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the merits of the appeal.

In this opinion the other justices concurred.