******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

J. BURKE MANDABLE ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF
WESTPORT ET AL.
(AC 38369)

DiPentima, C. J., and Prescott and Lavery, Js.

*Argued January 4—officially released May 16, 2017*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Genuario, J.)

*Alan R. Spirer*, for the appellants (plaintiffs).

*Peter V. Gelderman*, for the appellees (named defendant et al.).

*Daniel J. Krisch*, with whom, on the brief, was *Eric D. Bernheim*, for the appellees (defendant Norman Kramer et al.).

*Opinion*

LAVERY, J. The dispositive issue in this appeal is whether two lot line adjustment maps were improperly recorded in the Westport land records by the defendants Norman Kramer and Karen Kramer (Kramers) because the maps qualify as "resubdivisions," as that term is defined in General Statutes § 8-18,[1] and thus required approval by the defendant Planning and Zoning Commission of the Town of Westport (commission) to be valid. The plaintiffs, J. Burke Mandable and Paula K. Mandable, appeal from the judgment of the trial court denying their request for declaratory relief and dismissing their appeal from the decision of the commission, in which the commission declined to consider their challenge to two maps that the Kramers recorded with approval from the defendant Laurence Bradley, the planning and zoning director of Westport, but not from the commission.[2] On appeal, the plaintiffs claim that the trial court erred in concluding that the Kramers were not required to obtain the commission's approval because their maps were not "resubdivisions" under § 8-18. We affirm the judgment of the trial court.[3]

The following facts, as found by the court in its memorandum of decision, and procedural history are pertinent to this appeal. In 1929, before the town of Westport (town) adopted subdivision regulations, a map numbered 682 (1929 map) was filed in the Westport Land Records. The 1929 map encompassed the properties now known as 10 Wakeman Road and 11 Wakeman Road in Westport. The plaintiffs own 11 Wakeman Road and the Kramers own 10 Wakeman Road.

In 2010, the Kramers submitted a map to Bradley for his review. The map purported to consolidate two parcels of land into a single lot at 10 Wakeman Road. In accordance with § 45-10 of the Westport Zoning Regulations,[4] Bradley signed and dated the map, making it eligible for recording in the land records, and affixed it with the following notation: "[T]his plan is neither a subdivision nor a resubdivision as defined by the General Statutes of Connecticut and the [town] and may be recorded without prior approval of the [commission]. This stamp allows this map to be filed in the Westport Land Records. The presence of this stamp is not an endorsement of the accuracy of the map by the [town] or any board, commission, agency or official agent or employee of the town." The map was recorded in the land records in June, 2010. In 2013, the Kramers submitted a second map to Bradley for his review, which purported to divide 10 Wakeman Road into two lots. Bradley signed, dated, and stamped the map with the same notation, and the map was recorded in May, 2013.

In January, 2014, after learning of the two lot line adjustment maps, the plaintiffs filed with the commis-

sion a "Petition for Determination of Re-Subdivision for Property Located at 10 Wakeman Road, Westport, Connecticut" (petition). In a letter dated January 20, 2014, the commission refused to consider the petition on the grounds that the plaintiffs' opportunity to appeal Bradley's actions "expired long ago" and that it was "unaware of any authority" upon which to consider the petition.

The plaintiffs filed a two count amended complaint against the defendants in the trial court. The first count appealed the commission's refusal to consider their petition.[5] The second count sought a declaratory judgment determining that, inter alia, the maps recorded by the Kramers were "resubdivisions" under § 8-18 and, therefore, required approval by the commission.[6]

The court rejected the plaintiffs' statutory argument in a memorandum of decision dated June 4, 2015. Relying on the plain language of § 8-18, the trial court determined that "there can be no 'resubdivision' unless there has first been a 'subdivision,' and the division of land prior to the adoption of subdivision regulations is not a subdivision." The court concluded that because the Kramers' maps did not modify a subdivision—that is, they altered the 1929 map that had been filed prior to the town's adoption of subdivision regulations—they were not resubdivisions and, therefore, did not require the commission's approval to be valid. Therefore, the court dismissed the plaintiffs' appeal and denied their request for declaratory relief.[7]

The plaintiffs claim that the court misconstrued § 8-18 in determining that the term "resubdivision" did not encompass the Kramers' maps. Specifically, the plaintiffs contend that § 8-18 defines "resubdivision" to include not only changes to maps of approved *subdivisions*, but also to changes to recorded *maps* that do not qualify as subdivisions because they were recorded before the town's subdivision regulations were adopted. The defendants respond that, under the plain language of the statute, a map cannot qualify as a resubdivision unless it modifies a subdivision. We agree with the defendants.

"[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . General Statutes § 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration, the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratextual evidence of

the meaning of the statute. . . . Only if we determine that the statute is not plain and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the legislative history and circumstances surrounding its enactment . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . We presume that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 614–15, 72 A.3d 394 (2013).

Turning to the relevant statutory provisions, General Statutes § 8-25 (a) recognizes that "the filing or recording of a subdivision plan without . . . approval [from the commission] shall be void." Section 8-18 provides in relevant part that "[a]s used in this chapter . . . 'subdivision' means the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose . . . of sale or building development . . . and includes resubdivision; *'resubdivision' means a change in a map of an approved or recorded subdivision or resubdivision* if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map . . . ." (Emphasis added.)

Our analysis begins and ends with the plain language of § 8-18—specifically the language providing that resubdivision means a change in a map "of an approved or recorded *subdivision* . . . ." (Emphasis added.) The words "approved" and "recorded" both modify the word "subdivision." Thus, resubdivision means a change to either an approved subdivision or a recorded subdivision. In either case, however, a map is not a resubdivision unless it alters a "subdivision," which, as defined in the preceding clause, is a division of land into three or more parts made subsequent to the adoption of subdivision regulations. See *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 431, 572 A.2d 951 (1990) ("[i]t is a familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance" [internal quotation marks omitted]). As the trial court succinctly put it, "there can be no 'resubdivision' unless there has first been a 'subdivision,' and the division of land prior to the adoption of subdivision regulations is not a subdivision." The text of § 8-18 is not reasonably susceptible to any other interpretation.[8]

Attempting to avoid this result, the plaintiffs focus on the phrase "approved or recorded" in § 8-18, specifically the word "or," which they contend supports the interpretation that "resubdivision" encompasses changes to approved subdivisions *as well as* maps that are not subdivisions because they were recorded before the subdivision regulations were adopted. We disagree. That construction completely ignores and would render meaningless the word "subdivision," which, as previously explained, is the object of the phrase "approved or recorded subdivision . . . ." General Statutes § 8-18 "must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, supra, 309 Conn. 615.

The plaintiffs' proposed construction is also untenable in light of the principle that "[t]he legislature is always presumed to have created a harmonious and consistent body of law . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Sokaitis* v. *Bakaysa*, 293 Conn. 17, 23, 975 A.2d 51 (2009). Section 8-18 provides that " 'subdivision' means the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations . . . *and includes resubdivision* . . . ." (Emphasis added.) If "resubdivision" meant maps recorded prior to the adoption of subdivision regulations, as the plaintiffs suggest, then the first half of the definition of "subdivision" would be meaningless, a result the legislature could not have intended.

Having resolved that question of statutory construction, we conclude that the plaintiffs cannot prevail. They do not contend that the Kramers' maps modified a "subdivision" within the meaning of § 8-18. Nor would any such argument be availing, for the Kramers' maps purported to alter the 1929 map, which had been recorded before the town adopted its subdivision regulations. To be a subdivision, "[t]he division of land must occur subsequent to the adoption of subdivision regulations by the planning commission. . . . Accordingly, any divisions of the land prior to the adoption of subdivision regulations don't count, and the first division thereafter, namely into two lots, is exempt as a so-called free cut." (Internal quotation marks omitted.) *Lost Trail, LLC* v. *Weston*, 140 Conn. App. 136, 145 n.8, 57 A.3d 905, cert. denied, 308 Conn. 915, 61 A.3d 1102 (2013), quoting R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 10.9, p. 290. Because the Kramers' maps do not alter a subdivision, they cannot, as we have explained, be considered resubdivisions, and are therefore exempt from the requirement of approval by the commission. Accordingly, the

court properly dismissed the plaintiffs' appeal and denied their request for declaratory relief.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 8-18 provides in relevant part: "As used in this chapter . . . 'subdivision' means the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes, and includes resubdivision; 'resubdivision' means a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map . . . ."

[2] Joint references herein to the Kramers, the commission and Bradley are to the defendants.

[3] The plaintiffs also claim that the court erred in rejecting their argument that the commission improperly delegated the authority to Bradley to determine whether a map submitted for filing in the land records qualified as a subdivision or resubdivision. The plaintiffs conceded at oral argument that it would be unnecessary to reach this claim if we determined that the Kramers' maps were not resubdivisions. Because we conclude that the Kramers' maps were not resubdivisions, we do not address this claim.

[4] Section 45-10 of the Westport Zoning Regulations provides in relevant part: "In instances where a division of land or adjustment of a property line is involved, the proposed record map will be subject to an administrative review by the Planning and Zoning Director . . . to determine that the division of land or property line adjustment is in conformance with the applicable zoning regulations. After this determination has been made, a stamp signed by the Director . . . will be placed upon the proposed record map. The record map is then eligible for filing within the Westport Land Records."

[5] In support of count one, the plaintiffs alleged that the commission acted illegally, arbitrarily, and in an abuse of its discretion by failing to review their claims that (1) Bradley erroneously determined that neither of the Kramers' maps were resubdivisions requiring commission approval, and (2) the commission illegally delegated authority to Bradley to determine whether maps submitted for filing constitute subdivisions.

[6] The plaintiffs also sought a declaratory judgment determining that the commission illegally delegated authority to Bradley to determine whether maps submitted for filing constitute subdivisions. The trial court rejected this argument in its June 4, 2015 memorandum of decision. See footnote 3 of this opinion.

[7] With respect to the court's dismissal of the plaintiffs' appeal from the commission's refusal to hear their petition, the court observed that, while it could have remanded the case to the commission for consideration of the merits of the plaintiffs' claims, such an additional step was unnecessary because the issues presented pure questions of law and were based upon undisputed facts. Thus, the court dismissed the plaintiffs' appeal rather than remand the case to the commission.

[8] Because the text of § 8-18 is unambiguous, we decline the plaintiffs' invitation to delve into the legislative history of the statute or the public policies it was designed to implement. See *Marchesi* v. *Board of Selectmen*, supra, 309 Conn. 614–15.