******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

RICHARD S. JEWELER, TRUSTEE, ET
AL. *v.* TOWN OF WILTON
(AC 43008)

Keller, Prescott and Elgo, Js.

*Syllabus*

The plaintiffs sought a declaratory judgment that proposed boundary line adjustments with respect to certain real property in Wilton did not require subdivision approval from the town zoning commission. The plaintiffs proposed to utilize a certain parcel of abutting land to adjust the size of three lots in an existing resubdivision. The defendant municipality maintained that dividing the parcel into four parts constituted a subdivision of the property, as well as a resubdivision, pursuant to the applicable statute (§ 8-18). The trial court concluded that the boundary line adjustments did not constitute a subdivision under § 8-18, but did constitute a resubdivision thereunder. The court rendered judgment in favor of the defendant, from which the plaintiffs appealed to this court. *Held*:

1. Contrary to the defendant's claim, the trial court properly concluded that the plaintiffs' proposed boundary line adjustments did not constitute a subdivision pursuant to § 8-18; because the plaintiffs' proposal merely reconfigured the contours of four existing lots and did not divide the abutting parcel into three or more lots, the court properly concluded that the line adjustments did not constitute a subdivision under § 8-18.

2. The trial court improperly concluded that the plaintiffs' proposal constituted a resubdivision under § 8-18, as no additional building lot would be created under the plaintiffs' proposal: prior to the boundary line adjustments proposed by the plaintiffs, there existed twelve lots in the resubdivision, as well as two separate parcels on abutting land that are unrelated to the resubdivision, and only three of those twelve lots and one of those parcels are relevant to this appeal, those four properties presently exist and will continue to exist under the reconfiguration contemplated by the plaintiffs; moreover, although one of the abutting parcels would be reduced in size, it would nonetheless continue to exist as the remainder parcel, and that reduction in size cannot constitute a resubdivision under § 8-18; furthermore, the defendant could not prevail on his claim that, because the plaintiff's survey map included not only revised depictions of the three lots of the resubdivision, but also the abutting remainder parcel, it reflected the creation of an additional building lot in the resubdivision, the defendant having failed to provide this court with any authority, and this court was aware of none, in which the mere inclusion of an abutting and previously existing building lot on a map, which was not part of either a prior subdivision or resubdivision, was held to constitute the creation of an additional building lot under § 8-18.

Submitted on briefs April 17—officially released September 1, 2020

*Procedural History*

Action seeking a declaratory judgment that certain boundary line adjustments in an existing resubdivision did not require subdivision approval, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the matter was tried to the court, *Hon. A. William Mottolese*, judge trial referee; judgment for the defendant, from which the plaintiffs appealed to this court. *Reversed in part*; *judgment directed*.

*Robert A. Fuller* and *Matthew C. Mason* filed a brief for the appellants (plaintiffs).

*Peter V. Gelderman* filed a brief for the appellee (defendant).

*Opinion*

ELGO, J. This case concerns the reconfiguration of lot lines in an existing resubdivision. The plaintiffs, Richard S. Jeweler and Derry Music Company,[1] own seven parcels of land situated between Millstone Road and Hickory Hill Road in Wilton. They brought this action seeking a declaratory judgment that certain boundary line adjustments among those parcels do not require subdivision approval under General Statutes § 8-18. The trial court concluded that the boundary line adjustments proposed by the plaintiffs did not constitute a subdivision pursuant to § 8-18, but did constitute a resubdivision thereunder. We disagree with the latter conclusion and, accordingly, reverse in part the judgment of the trial court.

The relevant facts are not in dispute. In 1954, the Planning and Zoning Commission of the Town of Wilton (commission) approved a subdivision of real property located between Millstone Road and Hickory Hill Road. In 1968, the commission approved a resubdivision of the southwesterly portion of that subdivision into twelve lots, as documented on map no. 2784 on the Wilton Land Records. The plaintiffs currently own six of those lots, known as lots 5 through 10 of the resubdivision.[2] Those lots are located in a residential zone.

In 1969, the owner of an abutting 10.588 acre parcel of land[3] divided that property into two lots, known as parcel 1A and parcel 1B, as shown on map no. 2871 on the land records. In 1979, a boundary line adjustment was made to those two parcels, which increased the size of parcel 1A by one acre, while decreasing the size of parcel 1B accordingly. As a result of that adjustment, parcel 1B contained 7.066 acres. The 1979 boundary line adjustment is memorialized on map no. 3697 on the land records. Map no. 3697 contains notations from the Wilton town planner that "[t]his plan is neither a subdivision nor a resubdivision" under the General Statutes and that "[p]arcel 1B meets all zoning requirements for area and dimension." The plaintiff Derry Music Company is the current owner of parcel 1B.

The present action concerns the plaintiffs' attempt to utilize parcel 1B to adjust the size of three lots in the resubdivision.[4] Specifically, they propose a reconfiguration of certain boundary lines, which would result in the transfer of three segments of land from parcel 1B to lot 7, lot 8, and lot 9 of the resubdivision. Both before and after the reconfiguration proposed by the plaintiffs, parcel 1B and lots 7, 8, and 9 all satisfied the minimum lot size requirements for the residential zone in which they are situated.[5]

The proposed reconfiguration of those boundary lines is documented on the "Property Survey Depicting Revised Properties" (survey) prepared by the plaintiffs. In addition, the plaintiffs created a document titled

"Data Accumulation Plan Revision to Parcel 1B," which details the "portions" of parcel 1B that would be transferred to lots 7, 8, and 9 of the resubdivision, as well as the configuration of what it describes as "Remainder of Revised [Parcel] 1B" (remainder parcel).

The plaintiffs commenced this declaratory judgment action in May, 2018. In their complaint, they alleged that the "boundary line adjustments and the addition and consolidation of the three parts of [parcel] 1B to adjacent [l]ots . . . is allowed as a matter of law and is not a subdivision of land as defined in [§] 8-18 . . . and is allowed without the . . . approval of the [c]ommission." By contrast, the defendant municipality maintained that dividing parcel 1B into four parts constitutes a subdivision of the property, as well as a resubdivision, pursuant to § 8-18.

A court trial followed, at which both testimonial and documentary evidence was admitted. In its subsequent memorandum of decision, the court agreed with the plaintiffs that the proposed boundary line adjustments did not constitute a subdivision of the property. The court further determined that, because the remainder parcel proposed by the plaintiffs "creates an additional building lot which is part of the resubdivision," the plaintiffs' proposed boundary line reconfiguration "constitutes a resubdivision" under § 8-18. The court thus rendered judgment in favor of the defendant, and this appeal followed.

The dispute in this case centers on whether the boundary line adjustments proposed by the plaintiffs constitute either a subdivision or a resubdivision requiring commission approval. Because that issue concerns the proper application of § 8-18 to undisputed facts, our review of that legal question is plenary. See, e.g., *Independent Party of CT—State Central* v. *Merrill*, 330 Conn. 681, 699, 200 A.3d 1118 (2019); see also *Webster Bank* v. *Zak*, 259 Conn. 766, 773, 792 A.2d 66 (2002).

I

SUBDIVISION

In both the proceeding before the trial court and this appeal, the defendant claimed that that the boundary line adjustments proposed by the plaintiffs constitute a subdivision requiring commission approval pursuant to § 8-18. In its memorandum of decision, the court concluded that the plaintiffs' proposal does not meet the definition of a subdivision set forth in § 8-18. We agree.

Section 8-18 defines "subdivision" as "the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes, and includes resubdivision . . . ." Our Supreme Court has held that

"the language of § 8-18 is clear and unambiguous. . . . [I]n order to constitute a subdivision, the clear language of the statute has two requirements: '(1) [t]he division of a tract or parcel of land into three or more parts or lots, and (2) for the purpose, whether immediate or future, of sale or building development.'" (Citation omitted.) *Cady* v. *Zoning Board of Appeals*, 330 Conn. 502, 510, 196 A.3d 315 (2018). The court further emphasized that "the appropriate inquiry under § 8-18 is whether one lot has been divided into three or more lots." Id., 514.

When an owner of multiple parcels of real property proposes boundary line adjustments that do not result in the division of one parcel into three or more lots but, rather, simply reconfigure the shape of presently existing lots, such action does not constitute a subdivision of the parcel. Id.; accord *500 North Avenue, LLC* v. *Planning Commission*, 199 Conn. App. 115, 126, A.3d (2020) (rejecting claim that proposed reconfiguration of boundary lines constituted division of parcel and concluding that plaintiffs' proposed boundary line adjustments did not constitute subdivision under § 8-18 because "there simply was no additional lot created"). That is precisely the case here. Because the plaintiffs' proposal merely reconfigures the contours of four existing lots, and does not divide parcel 1B into three or more lots, the court properly concluded that it does not constitute a subdivision under § 8-18.[6]

## II

## RESUBDIVISION

The court also concluded that the plaintiffs' proposal constituted a resubdivision under § 8-18. On appeal, the plaintiffs challenge the propriety of that determination.

Section 8-18 defines "'resubdivision'" as "a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map . . . ." In the present case, it is undisputed that the plaintiffs' proposal does not affect a street shown on the 1968 resubdivision map or an area reserved thereon for public use.[7] Accordingly, the relevant inquiry is whether the plaintiffs' proposal "diminishes the size of any lot shown thereon *and* creates an additional building lot . . . ." (Emphasis added.)

The parties agree, and the court so concluded, that the plaintiffs' proposed boundary line adjustments diminish the size of lot 7. See footnote 5 of this opinion. The parties disagree as to whether the plaintiff's proposal creates an additional building lot. In its memorandum of decision, the court concluded that the plaintiffs'

proposal would result in the creation of an additional building lot, namely, the remainder parcel. We do not agree.

Prior to the boundary line adjustments proposed by the plaintiffs, there existed twelve lots in the resubdivision, as well as two separate lots on abutting land known as parcel 1A and parcel 1B that are unrelated to the resubdivision. See footnote 3 of this opinion. Only four of those lots are relevant to this appeal—lots 7, 8, and 9 of the resubdivision, and parcel 1B. Those four lots presently exist and will continue to do so under the reconfiguration contemplated by the plaintiffs. See footnote 5 of this opinion. As a result, no additional building lot will be created under the plaintiffs' proposal.

Admittedly, parcel 1B will be reduced in size, but it nonetheless will continue to exist as the remainder parcel depicted on the data accumulation plan that was admitted into evidence. More importantly, that reduction in size cannot constitute a resubdivision under § 8-18. As this court has observed, "resubdivision means a change to either an approved subdivision or a recorded subdivision. . . . [T]here can be no resubdivision unless there has first been a subdivision. . . ." (Citation omitted; internal quotation marks omitted.) *Mandable* v. *Planning & Zoning Commission*, 173 Conn. App. 256, 263, 163 A.3d 69 (2017). In their complaint, the plaintiffs alleged in relevant part that "[t]he parties agree that the proposed boundary line adjustments and the reduction in the size of [parcel] 1B on map [no.] 3697 is not a resubdivision of that property because it is not a change in an approved or recorded subdivision . . . ." In its answer, the defendant admitted the truth of that allegation and it is, therefore, bound by that admission. See *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 769, 890 A.2d 645 (2006) ("[T]he admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader. . . . A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it. . . . [The] admission in a plea or answer is binding on the party making it, and may be viewed as a conclusive or judicial admission . . . . It is axiomatic that the parties are bound by their pleadings." (Citations omitted; internal quotation marks omitted.)); see also *Franchi* v. *Farmholme, Inc.*, 191 Conn. 201, 214, 464 A.2d 35 (1983) (answer to allegation in complaint binding as judicial admission).

The defendant, however, contends that because the survey includes not only revised depictions of lots 7, 8, and 9 of the resubdivision, but also the remainder parcel, it reflects the creation of an additional building lot in the resubdivision. We disagree. As the plaintiffs note in their principal appellate brief, "[t]he fact that

[the remainder parcel] abuts the [resubdivision] property as shown on the [survey] does not make it a part of the resubdivision. Maps of property prepared and/or filed in the land records frequently show abutting lots, parcels or property boundaries, without intending to or resulting in the consolidation of those parcels; they are only to identify the physical location of the adjacent properties, its owners and other relevant information and features of the other land in the area. Many maps also show two or more abutting parcels of land with the same property owner that remain as separate lots, which are not consolidated into one property." We concur with that observation. We further emphasize that the salient provisions of § 8-18 contemplate the division of an existing parcel of land that results in the creation of an additional building lot. The defendant has provided this court with no authority, and we are aware of none, in which the mere inclusion of an abutting and previously existing building lot on a map, which was not part of either a prior subdivision or resubdivision, was held to constitute the creation of an additional building lot, as that terminology is used in § 8-18. To paraphrase *500 North Avenue, LLC* v. *Planning Commission*, supra, 199 Conn. App. 126, there simply was no additional lot created, as the same number of lots exist before and after the plaintiffs' proposal.

We, therefore, conclude that the boundary line adjustments proposed by the plaintiffs do not constitute a resubdivision pursuant to § 8-18. For that reason, the court improperly rendered judgment in favor of the defendant.

The judgment is reversed in part and the case is remanded with direction to render a declaratory judgment in favor of the plaintiffs in accordance with this opinion.

In this opinion the other judges concurred.

[1] Richard S. Jeweler is a party to this action in his capacity as trustee of both the David W. Brubeck Trust and the Iola Brubeck Trust. In their complaint, the plaintiffs describe Derry Music Company as "a Brubeck family entity . . . ."

[2] The other six lots of the resubdivision are owned by third parties and are not at issue in this action.

[3] That 10.588 acre parcel was not part of either the 1954 subdivision or the 1968 resubdivision.

[4] In their complaint, the plaintiffs alleged in relevant part that "[w]hen the . . . resubdivision was approved in 1968, the [town of Wilton] had not yet enacted inland wetlands regulations (which occurred in 1974); all of the . . . remaining undeveloped lots [in the resubdivision] have inland wetlands on them. The plaintiffs have proposed boundary line adjustments for [conservation] reasons to make the lots and proposed development more environmentally sensitive and to avoid wetland impacts and restrictions, and to prevent problems with access and development of their current remaining lots."

[5] Douglas Faulds, a licensed land surveyor, testified at trial that the minimum size of a building lot in the applicable residential zone is two acres. The court also was presented with uncontroverted evidence that, as a result of the reconfiguration proposed by the plaintiffs, the lot size of parcel 1B would be reduced from 7.066 to 2.04 acres, lot 7 would be reduced from 5.265 to 4.981 acres, lot 8 would be increased from 3.17 to 3.772 acres, and lot 9 would be increased from 2.30 to 5.168 acres.

[6] The defendant also raised an issue of statutory construction in the proceeding before the trial court, claiming that the phrase "three or more parts or lots," as used in § 8-18, suggests that the proposed transfer of three segments of land from parcel 1B to lot 7, lot 8, and lot 9 constituted the division of parcel 1B into four parts. The court rejected that contention, and the defendant in this appeal has not offered any statutory analysis of the language in question.

We nonetheless note that this court, in *500 North Avenue, LLC* v. *Planning Commission*, supra, 199 Conn. App. 132–33, recently rejected an identical claim regarding the proper construction of § 8-18. As the court explained, "when the word 'parts,' as used in the definition of subdivision pursuant to § 8-18, is read in light of its commonly approved usage and together with the definition of resubdivision, its meaning is plain and unambiguous because it is susceptible to only one reasonable interpretation. . . . [T]he word 'parts' is to be read together with the word 'lots' so as to clarify the latter's meaning." Id. This court further concluded that "the legislature intended the word 'parts' to refer to separate but whole, not fractional, members of a tract of land." Id., 131. The analysis provided by the trial court in the present case fully comports with that precedent.

[7] In its memorandum of decision, the court found that "[i]t is obvious that the only portion of § 8-18 [that] is implicated by the proposed lot realignment is subsection (c)." The defendant does not contest that determination in this appeal.