## LIBA H. FURHMAN *v.* DEPARTMENT OF TRANSPORTATION
### (12159)

FOTI, LAVERY and SCHALLER, Js.

Argued December 2, 1993—decision released March 22, 1994

*Robert L. Marconi,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Jeffrey B. Sienkiewicz,* for the appellee (plaintiff).

LAVERY, J. The defendant department of transportation (DOT) appeals from the trial court's judgment

in favor of the plaintiff mayor of the town of New Milford on her appeal from the DOT's order regarding installation of safety devices at a pedestrian railroad crossing in New Milford. The DOT argues that the trial court improperly found that (1) the DOT lacked statutory authority to mandate installation of safety devices, and (2) the record contained insufficient evidence to support the DOT's determination that the safety devices were necessary. We reverse the judgment of the trial court.

This case had its genesis in a special enactment of the General Assembly that permitted the town to construct an at-grade pedestrian crossing over the railroad tracks running between a municipal parking lot and the town's commercial area. Special Acts 1989, No. 89-32.[1] The town agreed with Conrail, the owner of the rail lines, to fund construction of a single ten foot crossing. The town also requested information from the DOT regarding required safety features.

The DOT held a hearing pursuant to General Statutes § 13b-343[2] on October 28, 1991, concerning the

---

[1] Special Acts 1989, No. 89-32, § 2, provides: "Notwithstanding any provision of the general statutes, special act or regulation to the contrary, the town of New Milford is authorized to enter into an agreement with Conrail for the construction of a pedestrian, at-grade crossing from the municipal parking lot to the railroad station and to Railroad and Bank Streets in New Milford, and that the town of New Milford and Conrail may enter into an agreement that would allow New Milford to assume responsibility for the costs of maintaining the crossing and for any liability for damage to persons or property as a result of using such crossing. Such crossing shall be subject to the provisions of sections 13b-342 to 13b-347, inclusive, of the general statutes."

[2] General Statutes § 13b-343 provides: "The commissioner of transportation, when requested in writing by the selectmen of any town, the mayor and common council of any city or the warden and burgesses of any borough to order gates, a flagman or electric signals or other signal device to be installed and maintained at any railroad crossing where a railroad crosses a public highway at grade within such town, city or borough, shall hold a hearing thereon or may, of his own motion, hold such a hearing, first giving the town, city or borough wherein the crossing is located, and

necessary safety devices. Representatives of the town and the DOT testified before the adjudicator; Conrail stated by letter that it had no objection to any safety devices ordered. On March 3, 1992, the DOT ordered the town to install gates, flashing warning lights, a bell, and a fence parallel to the tracks extending the entire length of the parking lot.

The plaintiff appealed this order to the Superior Court pursuant to General Statutes § 4-183.[3] After a hearing, the trial court ruled on January 26, 1993, that the DOT's order exceeded its statutory authority and was not supported by substantial evidence. This appeal followed.

I

The DOT claims that the special act that granted the town permission to build the crossing also granted the DOT authority to determine the required safety features. In addition to authorizing the new crossing, Special Acts 1989, No. 89-32, § 2, provided that the "crossing shall be subject to the provisions of sections 13b-342 to 13b-347, inclusive, of the general statutes." General Statutes § 13b-343 authorizes the DOT to order a railroad company to install safety devices where a

the company operating the railroad, reasonable notice thereof. If the commissioner upon such hearing finds that public safety requires it, the commissioner shall order such company to install and maintain, at such crossing, gates, a flagman or such electric signals or other signal device as may be approved by the commissioner, or to do any other act deemed necessary for the protection of the public. The commissioner may rescind, alter or amend any such order, whenever the commissioner deems it necessary, upon first giving the municipality wherein the crossing is located and the railroad company an opportunity to be heard thereon. If any such company fails to comply with any order of the commissioner made pursuant to this section, it shall forfeit to the state fifty dollars for each day off such failure."

[3] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

railroad crosses a public highway at-grade. A literal reading of § 13b-343 would suggest that it does not apply where a town, rather than a railroad company, seeks to install a crossing at a parking lot, rather than a public highway. Thus, the special act's requirement that § 13b-343 apply to this crossing appears to conflict with the language of § 13b-343 itself.

"Statutes should be read so as to harmonize with each other, and not to conflict with each other." *Tolly* v. *Dept. of Human Resources,* 225 Conn. 13, 28, 621 A.2d 719 (1993). We must presume that the legislature intended the two statutes to be read together and to be construed, wherever possible, to avoid conflict between them. *Berger* v. *Tonken,* 192 Conn. 581, 589–90, 473 A.2d 782 (1984).

Special Acts 1989, No. 89-32, § 2, explicitly demonstrates that the legislature intended § 13b-343 to apply to this crossing. Moreover, the act permits the town to assume responsibility for maintaining the crossing. Generally, crossing maintenance is the responsibility of the railroad company operating the line. See General Statutes §§ 13b-343, 13b-345, 13b-347. Thus, it is clear that the legislature intended to permit the town to assume the railroad company's role in this instance.[4]

The DOT has the statutory authority to order a railroad company to install safety devices at crossings. The plaintiff argues that the DOT exceeded its authority because its order was directed at a municipality, not

---

[4] The legislative history of Special Acts 1989, No. 89-32, supports this view. During the debate on this legislation, Senator Adela Eads, one of the bill's sponsors, explained its purpose. "This is authorizing the town of New Milford to enter into an agreement with Conrail for the construction of pedestrian at-grade crossing near their municipal parking lot. This is something, I have letters from Conrail saying this is perfectly all right with them, the town of New Milford will have paid the cost of the crossing, and will assume all responsibility for damages and liability." 32 S. Proc., Pt. 6, 1989 Sess., p. 1962.

at a railroad. The plaintiff's argument, however, would make § 13b-343 inapplicable to this crossing, a result clearly unintended by the legislature. Further, because the town assumed the railroad company's role envisioned by § 13b-343, the DOT's order was properly directed toward the entity responsible for installing and maintaining safety devices. Therefore, the DOT acted within its authority when it directed the town to install safety devices.

The plaintiff also argues that § 13b-343 applies only where a railroad crosses a public highway. Here again, the plaintiff seeks to construe § 13b-343 as inapplicable to this crossing. The legislature, however, intended otherwise and made its intention explicit in Special Acts 1989, No. 89-32, § 2.[5] We must presume that the legislature intended these two statutes to work together. The only way to harmonize these statutes is to treat this crossing like a public highway.

Moreover, our Supreme Court stated in *Stavola* v. *Palmer,* 136 Conn. 670, 683, 73 A.2d 831 (1950), that " '[a] highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle. In every highway the King and his subjects may pass and repass at pleasure.' The essential feature of a highway is that it is a way over which the public at large has the right to pass. . . . Accordingly, the term 'highway' is ordinarily used in contradistinction to a private way, over which only a limited number of persons have the right to pass." (Citations omitted.) Thus, a pedestrian crossing, created by statute and by license from Conrail, between a municipal

---

[5] The plaintiff argues that this crossing is a private crossing as defined and controlled by General Statutes § 13b-292. The commissioner of transportation, however, also has authority to prescribe the nature of traffic control devices at private crossings. General Statutes § 13b-292 (d). Thus, regardless of whether it is a public highway or private crossing, the DOT acted within its authority.

parking lot and a public highway is encompassed within the meaning of public highway set forth in *Stavola* and General Statutes § 13b-343.

Finally, the plaintiff argues that the DOT exceeded its authority by holding a hearing pursuant to § 13b-343 absent a request from the town for a hearing. This claim is meritless. Section 13b-343 provides that a hearing must be held when requested by a municipality. It also provides that the commissioner of transportation may hold a hearing on its own motion. Presuming that the town's request for information regarding safety devices was not a request for a hearing, the DOT was still within its statutory authority when it acted of its own accord.

Therefore, the DOT acted within its statutory authority when it ordered the town to install safety devices.

II

The final issue on appeal is whether the trial court properly found that the DOT did not have substantial evidence to support its decision. The plaintiff appealed to the Superior Court pursuant to General Statutes § 4-183. Under the well established standard of judicial review of administrative agency rulings, a reviewing court "may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. . . . Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . ." (Citations omitted; internal quotation marks omitted.) *Tomlinson* v. *Board of Education,* 226 Conn. 704, 713, 629 A.2d 333 (1993). The reviewing court may reverse or modify an administrative decision only if the "substantial rights of the [appellant] have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the

statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (j).

In this case the trial court ruled that the DOT's order was clearly erroneous in light of the substantial evidence in the record. General Statutes § 4-183 (j) (5). "An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . In determining whether an administrative finding is supported by substantial evidence, a court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Citations omitted; internal quotation marks omitted.) *Briggs* v. *State Employees Retirement Commission,* 210 Conn. 214, 217, 554 A.2d 292 (1989).

The record reveals that, at present, pedestrians cross the two train tracks along the entire length of the municipal parking lot. Further, the parking lot is open to the public and is used to access the railroad station and the town's commercial area. Although only two trains use the tracks daily and they pass at ten miles per hour, Conrail has the right to alter train frequency and speed at any time. "Where an agency has expertise in a given area and a history of determining factual and legal questions similar to those at issue, its interpretation is granted deference by the courts." *Plastic Distributors, Inc.* v. *Burns,* 5 Conn. App. 219, 229, 497 A.2d 1005 (1985). In this case, the DOT had before it a substantial basis of fact from which to conclude that the safety devices were necessary to ensure

public safety.[6] Therefore, the DOT ruling was supported by substantial evidence and should not have been reversed.

The judgment of the trial court is reversed and the case is remanded with direction to render judgment dismissing the plaintiff's appeal.

In this opinion the other judges concurred.

---

[6] The plaintiff argues that the DOT's order was based solely on a DOT regulation that has never been adopted pursuant to the rulemaking provisions of the Uniform Administrative Procedure Act. General Statutes § 4-168. If the DOT had based its decision on an improperly adopted regulation, that decision would be subject to reversal. The plaintiff fails to demonstrate, however, that the DOT relied on such a regulation. The plaintiff merely cites the DOT's conclusion, which explicitly refers to the evidence and testimony in the record. Absent proof, we must presume that an agency acted properly.