MULLINS, J.
**504 *317 The defendant GM Retirement, LLC,[1] appeals from the judgment of the trial court sustaining the administrative appeal of the plaintiff, Bruce A. Cady.[2] In the present appeal, the defendant argues that the trial court improperly (1) concluded that the defendant's proposed revision of boundary lines between certain adjacent lots constituted a new subdivision under General Statutes § 8-18,[3] thereby implicating § IV.B.5 of the Burlington Zoning Regulations (regulations), which requires an increased minimum lot area for new subdivisions, and (2) applied § III.F.7 of the regulations, which governs the establishment of nonconforming uses on preexisting lots. We conclude that the trial court improperly determined that the defendant's **505 proposed lot line revisions constituted a subdivision and improperly applied § III.F.7 of the regulations.
More specifically, we conclude that, when the town of Burlington (town) adopted § IV.B.5 of the regulations on October 1, 1983, the defendant's property contained three conforming, buildable lots, and that the proposed lot line revisions at issue in this case maintained three conforming, buildable lots. Thus, the defendant's proposed lot line revisions did not create a subdivision because those revisions did not divide one parcel of land into three or more parts. As a result, we further conclude that the defendant did not propose the establishment of a nonconforming use because the property lines, as revised, met the size requirements applicable to lots in existence as of October 1, 1983. Therefore, the trial court improperly applied § III.F.7 of the regulations to the present case. Accordingly, we reverse the judgment of the trial court.
The record and the trial court's memorandum of decision reveal the following facts and procedural history. The plaintiff resides in Burlington, and the defendant owns property abutting the plaintiff to the east.[4] Both the plaintiff's property and the defendant's property are bordered by Claire Hill Road to the north and Route 179 to the south. The defendant's property consists of 1.63 acres, which was once four *318 lots. The largest of these four lots, 48 Claire Hill Road, contains a two family dwelling and occupied roughly the entire northerly half of the defendant's property.
The remaining three lots are to the south along Route 179. The first of these lots, located to the east, was previously owned by Clara L. Rainault. The second lot, located in the center, was previously owned by Donald **506 F. Wark and Ellen P. Wark. The third lot, located to the west, was previously owned by Mary Legowski. In 1959, the Department of Transportation took land from these three southerly lots to widen what is now Route 179.[5]
After the state widened Route 179, there were portions of each of the three southern lots that were unused. The unused portion of the eastern lot had been retained by Rainault but, because of the amount of that lot used to widen Route 179, that remnant became a nonconforming lot. The Department of Transportation had taken ownership of the Wark and Legowski lots in their entirety, and those lots remained conforming, even after a portion of each was used to widen Route 179. As a result, where there had once been four conforming lots, now there were three conforming lots.
In 1986, the defendant's predecessor in title purchased the remnant of the Rainault lot. That lot was then combined with 48 Claire Hill Road to make one lot. The parties do not dispute that when the defendant's predecessor in title purchased the Rainault lot, it was combined with 48 Claire Hill Road. In 2013, the defendant purchased 48 Claire Hill Road, which now included the Rainault lot. Then, in 2014, the defendant purchased the remnants of the Wark and Legowski lots from the state.
Thereafter, the defendant presented a map of the three lots with revised property boundaries to the town's zoning enforcement officer, Liz Burdick, for approval.[6] In this map, dated May 22, 2014, the defendant **507 proposed lot line revisions which reconfigured the three lots on its property. The sizes of the three reconfigured lots were, respectively, 30,261 square feet, 16,866 square feet, and 24,057 square feet. Burdick found that "[t]he three lots that were reconfigured as shown on this map [dated May 22, 2014] have been in existence since at least September 1958 as evidenced in a map entitled 'Town of Burlington, Map Showing Land Acquired from Clara L. Raineault, [b]y [t]he State of Connecticut ....' "
Burdick further explained as follows: "The land comprising the current [three] lots was originally [four] lots .... The Rainault, Wark [and] Legowski lots were subject to a state taking for road improvements on Route [179]. The [s]tate ... acquired the Wark [and] Legowski lots in their entirety in 1959. Rainault retained her (now non-conforming) lot and then transferred it to [the defendant's predecessor in title] in 1986 to be combined with 48 Claire Hill Road .... Therefore, as of the time of the filing of the subject [l]ot [l]ine [r]evision map, it is my opinion there were three preexisting lots, one at 48 Claire Hill Road ... and two on [Route 179] ... which could be reconfigured as needed to comply with current minimum bulk requirements *319 of the R-15[7] zoning district for purposes of lot **508 improvement and that no subdivision was required in order to proceed to do so." (Footnote added.) Burdick further found that "the filing of the May 22, 2014 [l]ot [l]ine [r]evision [m]ap, reconfiguring the properties [into] conforming R-15 zone lots permits development ...."
The plaintiff filed an appeal with the town's Zoning Board of Appeals (board), which held a public hearing. The board ultimately denied the appeal and upheld Burdick's decision.
The plaintiff then filed an appeal with the trial court pursuant to General Statutes § 8-8 (b), alleging that the board committed both procedural and substantive errors when it denied his appeal. Specifically, the plaintiff claimed, inter alia, that the proposed realignment of boundary lines for the three lots constituted a subdivision under § 8-18 and that the resultant lots were too small to satisfy the minimum lot area requirements for lots created by subdivision after October 1, 1983.
The trial court agreed with the plaintiff and reversed the decision of the board. The trial court found that the board improperly concluded that the defendant's proposed lot line revision did not constitute a subdivision within the meaning of § 8-18. In reaching this conclusion, it relied on the Appellate Court's decision in Goodridge v. Zoning Board of Appeals , 58 Conn. App. 760, 765-66, 755 A.2d 329, cert. denied, 254 Conn. 930, 761 A.2d 753, and cert. denied, 254 Conn. 930, 761 A.2d 753 (2000), for the proposition that any change other than a "minor lot line adjustment ... whereby no new lot is created" constitutes a subdivision.
More specifically, the court stated "it would appear that a new subdivision was created because three new lots were created. [The second proposed lot] did not previously exist, and, at 16,866 square feet, it fails to comply with [§ IV.B.5 of the regulations, which requires **509 a minimum of] 43,650 square feet. As an approximately 120 foot by 140 foot cut out of the former [48 Claire Hill Road] property, it cannot be said to be a minor lot line adjustment." (Citation omitted.) It concluded, therefore, that the change proposed by the defendant was not a minor lot line adjustment but was a subdivision.
Having concluded that the defendant's proposed lot line revision constituted a subdivision, the trial court determined that § III.F.7 of the regulations must be applied to determine whether the lots were "preexisting." The trial court concluded that the board improperly determined that the lots were "preexisting" pursuant to § III.F.7 of the regulations. Instead, the trial court found that one of the lots in the lot line revision map was a new lot and failed to meet the greater area requirements of the regulations. This appeal followed. See footnote 2 of this opinion.
I
The defendant first asserts that the trial court improperly concluded that the defendant's revision of the lot lines constituted a "subdivision" for purposes of § 8-18. We agree.
The plaintiff's appeal requires us to construe the meaning of the word subdivision.
*320 Therefore, this appeal raises an issue "of statutory construction, to which well settled principles and plenary review apply.... In seeking to determine that meaning, General Statutes § 1-2z directs us to first consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of a statute shall not be considered.... When a statute is not plain and unambiguous, we also look for interpretive guidance to the **510 legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter ...." (Citation omitted; internal quotation marks omitted.) Kuchta v. Arisian , 329 Conn. 530, 534-35, 187 A.3d 408 (2018).
We, therefore, begin with the text of the statute. Section 8-18 provides in relevant part: "As used in this chapter ... 'subdivision' means the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by [a planning commission], for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes ...."
In interpreting the meaning of the term "subdivision" in § 8-18, we do not write on a clean slate. In McCrann v. Town Plan & Zoning Commission , 161 Conn. 65, 70, 282 A.2d 900 (1971), this court examined the meaning of the term "subdivision" in § 8-18. In that case, the defendants sought to build on a plot of land consisting of 2.2 acres, which was created by combining two lots. Id. The plaintiffs asserted that the trial court improperly failed to treat the combining of the two lots into one lot as a subdivision. Id., at 69, 282 A.2d 900. This court rejected the plaintiffs' claim. Id., at 70, 282 A.2d 900.
The court concluded first that the language of § 8-18 is clear and unambiguous. Id. The court then explained that, in order to constitute a subdivision, the clear language of the statute has two requirements: "(1) [t]he division of a tract or parcel of land into three or more parts or lots, and (2) for the purpose, whether immediate or future, of sale or building development." Id. Therefore, this court concluded that, because the site in question was created by combining two lots into one **511 lot, "[t]here was no division of a tract into three or more parts or lots and in the absence of this statutory requirement there was no subdivision." Id. This court has not had the opportunity to interpret § 8-18 again since McCrann , and we see no reason to depart from that well reasoned decision.
With that construction of § 8-18 in mind, we now must determine whether the lot line revision proposed by the defendant in the present case constituted a subdivision.
The following facts are relevant to the resolution of that claim in the present case. Burdick found that "the three lots that were reconfigured as shown on this map have been in existence since at least September 1958 ...." In making this determination, Burdick explained that the lot retained by Rainault after the taking by the state was "non-conforming" after a portion of it was used to widen Route 179. "Therefore, as of the time of the filing of the subject [l]ot [l]ine [r]evision map, it is my opinion there were three pre-existing lots, one at 48 Claire Hill Road ... and two on [Route 179] ... which could be reconfigured as needed to comply with current minimum bulk requirements of the R-15 *321 zoning district for purposes of lot improvement and that no subdivision was required in order to proceed to do so." The board agreed that all three lots were in existence prior to 1983 and denied the plaintiff's appeal.
The trial court then reversed the decision of the board and sustained the plaintiff's appeal. The trial court found that a new lot was created by the proposed lot line revision. In particular, the trial court determined that, because the lot line revisions were more than minor, and because, in its view, a new lot was created, the defendant's proposed lot line revisions constituted a subdivision.
**512 "As a preliminary matter, we set forth our standard of review. A zoning board of appeals is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal.... A reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record.... The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached.... The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citation omitted; internal quotation marks omitted.) Caruso v. Zoning Board of Appeals , 320 Conn. 315, 321, 130 A.3d 241 (2016).
In the present case, the board's conclusion that the defendant's proposed lot line revision did not meet the definition of subdivision set forth in § 8-18 was supported by substantial evidence. In determining whether the defendant's proposed lot line revision constituted a subdivision, the board sought to determine what the property looked like at the time the town adopted its increased area regulations for new subdivisions in 1983. " Section 8-18 therefore directs our attention to the original tract of land from which the initial division of the property was made." Newman v. Planning & Zoning Commission , 293 Conn. 209, 216, 976 A.2d 698 (2009) ; see also id. (municipal planning and zoning commission properly applied its density regulations based on tract of land that existed at time subdivision requirements were first applied). After undertaking this inquiry, the board determined that there were three conforming lots in existence in 1983. The board's finding was consistent with Burdick's decision.
**513 Burdick explained that Rainault's lot had become nonconforming after the state took a portion of that lot to widen Route 179. Therefore, when the town's regulations were adopted in 1983, there were three conforming lots in existence-48 Claire Hill Road, the Wark lot, and the Legowski lot. Burdick further explained that Rainault's "now non-conforming" lot was combined with 48 Claire Hill Road in 1986. Indeed, the board upheld Burdick's decision that "there were three preexisting lots ... which could be reconfigured as needed to comply with current minimum bulk requirements of the R-15 zoning district for purposes of lot improvement and that no subdivision was required in order to proceed to do so." Accordingly, the board denied the plaintiff's appeal.
Instead of reviewing the board's decision to determine whether it was supported by substantial evidence, the trial court improperly considered whether the lots proposed by the defendant were of the same topography as the lots that had previously existed. This inquiry both exceeded the scope of the trial court's review of a *322 board's decision and was inconsistent with § 8-18.
It exceeded the scope because the board had determined that there were three conforming lots that had been in existence since at least 1959 and that the defendant's proposed lot line revisions did not divide any lot into three or more parts. Rather than assess whether those findings were supported by substantial evidence, the trial court appears to have disregarded those findings.
Instead, the trial court engaged in an inquiry as to whether the lots created by the defendant's proposed lot line revision were similar in topography to the lots that existed before the proposed lot line revision. Nothing in § 8-18 requires or suggests that maintaining the topography of a lot is a consideration in determining **514 whether a subdivision has occurred for purposes of the statute. Indeed, as we have explained previously herein, the appropriate inquiry under § 8-18 is whether one lot has been divided into three or more lots.
In the present case, there was sufficient evidence to support the board's determination that the defendant's lot line revision did not constitute a subdivision, as that term is defined in § 8-18 and construed in McCrann , because one lot was not divided into three. The evidence shows that three conforming lots simply were reconfigured into three differently shaped, yet still conforming, lots.[8] Accordingly, we conclude that the trial court's decision exceeded the scope of its authority and ignored the plain language of § 8-18.
The plaintiff makes one final point we are compelled to address, that is, that the trial court properly relied on Goodridge v. Zoning Board of Appeals , supra, 58 Conn. App. at 765-66, 755 A.2d 329, to support its conclusion in the present case that the defendant's proposed lot line revision constituted a subdivision. We disagree.
In Goodridge , the plaintiff claimed that the trial court improperly concluded that the property line changes constituted a subdivision when the plaintiff sought to add 0.005 acres from one lot to another. Id., at 762-64, 755 A.2d 329.
**515 The Appellate Court concluded as follows: "In this case, the land transferred from lot two to lot one was never divided from a whole parcel of land; rather it remained, at all times, as part of a larger parcel of land. Furthermore, the land never was sold separately or intended to be used for development, [but] simply was added to the adjacent parcel." Id., at 765, 755 A.2d 329. Accordingly, the Appellate Court concluded that the lot line revision in that case did not fall within the definition of "subdivision" set forth in § 8-18.
In doing so, the Appellate Court explained: "A minor lot line adjustment between two existing lots, whereby no new lot is created, does not constitute a 'subdivision' as defined by § 8-18 and, thus, does not require municipal approval.... To accept *323 every minor adjustment of property, even those that are inadvertent, as a 'subdivision' under § 8-18 would lead to a substantial increase in applications to municipal planning commissions and in land use appeals." Goodridge v. Zoning Board of Appeals , supra, 58 Conn. App. at 765-66, 755 A.2d 329. The plaintiff asserts that the trial court properly relied on this language to require that a lot line adjustment must be both minor and not create a new lot in order for the lot line adjustment not to constitute a subdivision under § 8-18. We disagree.
The plaintiff does not point to, and the trial court did not rely on, any language in the text of § 8-18 that supports the conclusion that a lot line adjustment must be both minor and not create a new lot in order for the lot line adjustment not to constitute a subdivision. Instead, the plaintiff and the trial court rely only on the language of Goodridge . We disagree with this reading of Goodridge . Indeed, in that case, the Appellate Court never addressed whether more significant lot line adjustments would constitute a subdivision. Id. Rather, the Appellate Court concluded only that, under the facts **516 presented in that case, the lot line adjustment did not constitute a subdivision for purposes of § 8-18. Id.
Moreover, the interpretation of § 8-18 adopted by the trial court and asserted by the plaintiff in the present case is not supported by the language of the statute. It is well established that "a court must construe a statute as written.... Courts may not by construction supply omissions ... or add exceptions merely because it appears that good reasons exist for adding them.... The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say.... It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) Tuxis Ohr's Fuel, Inc. v. Administrator, Unemployment Compensation Act , 127 Conn. App. 739, 744, 16 A.3d 777 (2011), aff'd, 309 Conn. 412, 72 A.3d 13 (2013).
Nothing in the plain language of § 8-18 indicates that the determination of whether a particular proposal constitutes a "subdivision" depends on the degree of the lot line adjustment. Indeed, § 8-18 does not address a lot line adjustment or the size of an adjustment at all; instead, it addresses "the division of a tract or parcel of land ...."[9] Similarly, § 8-18 does not address the creation of a new lot, but only the division into "three or more parts ...." To be sure, the phrase "division of a tract or parcel of land into three or more parts or lots" demonstrates that the creation of one new lot does **517 not constitute a subdivision. (Emphasis added.) General Statutes § 8-18. Accordingly, we conclude that the plain language of § 8-18 does not support the interpretation of the statute proposed by the plaintiff and adopted by the trial court.
In the present case, the board's decision that there were three lots in existence as of 1983 and, therefore, that the defendant's proposed lot line revision did not constitute a subdivision because it also *324 contained three lots, is supported by substantial evidence in the record. Accordingly, we conclude that the trial court improperly reversed the decision of the board and sustained the plaintiff's appeal.
II
The defendant next claims that the trial court improperly applied § III.F.7 of the regulations to its lots. Specifically, the defendant argues that its proposed lots meet the minimum size requirements for lots in existence prior to October 1, 1983, and therefore § III.F.7 of the regulations does not apply. We agree.
Section III.F.7 of the Burlington Zoning Regulations provides: "Where safe and adequate disposal of sewage and a safe water supply, as required by the Public Health Code, can be provided without endangering the health and [safety] of adjoining residents, nothing in these [r]egulations shall prevent the construction of a permitted building or the establishment of a permitted use on a lot containing less than the prescribed area or width which at the time of adoption hereof or any pertinent amendment hereto was ... [o]wned separately from any adjoining lot and filed in the Burlington land records, or ... [s]hown on a plan of subdivision by the Planning and Zoning Commission and filed in the Burlington land records." (Emphasis added.)
Section III.F.7 of the Burlington Zoning Regulations applies only to "a lot containing less than the prescribed **518 area ...." The proposed lots here, however, contain more than the minimum prescribed area. Indeed, as we explained previously herein, because we conclude that the defendant's lots were in existence prior to October 1, 1983, the lots meet the minimum size requirements of the R-15 zone. See Burlington Zoning Regs., § IV.B.5; see also footnote 7 of this opinion. Accordingly, we conclude that § III.F.7 of the regulations does not apply to the defendant's proposed lots.
The judgment is reversed and the case is remanded with direction to dismiss the plaintiff's appeal.
In this opinion the other justices concurred.
APPENDIX
**519 *325 --------

We note that, although the Town of Burlington Zoning Board of Appeals and its zoning enforcement officer, Liz Burdick, were also named as defendants in the underlying administrative appeal, they neither appealed nor filed briefs in this court. For the sake of simplicity, we refer to these parties by name and to GM Retirement, LLC, as the defendant.

The defendant, on the granting of certification, appealed from the judgment of the trial court to the Appellate Court. We then transferred that appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

General Statutes § 8-18 provides in relevant part: "As used in this chapter ... 'subdivision' means the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by [a planning commission], for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes, and includes resubdivision ...."

A map depicting the various properties at issue in the present case, together with the defendant's proposed boundary revisions, has been attached as an appendix to this opinion. See footnote 6 of this opinion.

The information contained within the record indicates that, at the time of this taking, this roadway formed part of Route 4. For the sake of simplicity, we use the road's current designation throughout this opinion.

For ease of reference, a portion of this map has been reproduced as an appendix to this opinion. We note that the solid bold lines on this map show the boundaries proposed by the plaintiff. Previously existing parcels, by contrast, were delineated by simple dotted lines.

Section IV.B of the regulations outlines the requirements applicable to lots within the R-15 zoning district, which is a residential zone. Specifically, § IV.B.5 of the Burlington Zoning Regulations provides in relevant part:
 "Minimum Lot Area: 43,560 square feet • For any lot created and record[ed] after January 1, 2002 • For any lot created by subdivision and recorded after October 1, 1983 15,000 square feet • For [any] lot in existence as of October 1, 1983 ...." 
The parties do not dispute that the lots proposed by the defendant in the May 22, 2014 map would meet the minimum lot area requirements applicable to lots in existence as of October 1, 1983.

The plaintiff had asserted, before both the board and the trial court, that there were only two lots in existence in 1983 because the Wark and Legowski lots merged at some point prior to 1983 when both lots were owned by the state. The board determined that the lots did not merge, and the trial court did not reverse that finding but instead concluded that "whether they merged is not really an issue." We conclude that we need not reach this issue because, even if there were only two lots in existence in 1983, the defendant's proposed lot line revision still would not constitute a subdivision. As we explained previously in this opinion, a subdivision is created only when one lot is divided into three or more parts. In the present case, one lot was never divided into three. Even under the plaintiff's view of the lots, two lots were divided into three, which does not constitute a subdivision for purposes of § 8-18.

Although § 8-18 does not address the degree of the lot line adjustment, it is undisputed that, even if a lot line revision does not constitute a subdivision, the resultant lots still must meet the applicable minimum lot area requirements. In the present case, it is not disputed that the defendant's proposed lot line revision contained three lots that all met the minimum lot area requirements for the R-15 zoning district for a lot that was in existence as of October 1, 1983. See footnote 7 of this opinion.