******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

500 NORTH AVENUE, LLC *v.* PLANNING
COMMISSION OF THE TOWN
OF STRATFORD
(AC 42235)

Alvord, Prescott and Lavery, Js.

*Syllabus*

The plaintiff landowner appealed from the decision of the defendant planning
commission, which had concluded that the plaintiff was required to file
an application for subdivision approval in order to revise the lot lines
of two abutting properties that it owned. The plaintiff submitted a map of
the properties to the town's planning and zoning administrator, seeking
a lot line adjustment that would reduce the acreage of one property
and increase the acreage of the second property by ten acres. Following
a hearing, the commission denied the plaintiff's request for a lot line
revision, concluding that the plaintiff's map required subdivision
approval because it created a drastic change in the existing lots. There-
after, the plaintiff appealed to the Superior Court, which rendered judg-
ment dismissing the appeal, from which the plaintiff, on the granting
of certification, appealed to this court, claiming, inter alia, that the
court improperly concluded that the plaintiff's proposed lot line revision
constituted a subdivision under the applicable statute (§ 8-18). *Held*:

1. The Superior Court improperly concluded that there was substantial
   evidence in the record to support the commission's finding that the
   plaintiff's proposed lot line adjustment of two adjacent lots constituted
   a subdivision under § 8-18: because no new lot was created from the
   boundary adjustment that resulted in three or more parts or lots, the
   proposed lot line revision did not satisfy the definition of subdivision
   pursuant to § 8-18; although one of the properties had previously been
   subject to a first cut, the commission's decision that subdivision approval
   was required was contrary to the language of § 8-18 as the plaintiff's
   proposal did not divide that property a second time, resulting in three
   or more parts or lots.
2. The Superior Court improperly concluded that subdivision approval was
   required because the proposed lot line revision was more than a minor
   adjustment: there was nothing in the language of § 8-18 that addresses
   the degree of the lot line adjustment, rather, the only relevant inquiry
   is whether the property was divided into three or more lots, and the
   mere changing of lot lines or adding additional land to lots, no matter
   how sizeable, does not constitute a subdivision.
3. The defendants could not prevail on their claim that because the proposed
   boundary line revision would create a third part, it required subdivision
   approval, which was based on their claim that the distinction in § 8-18
   between "parts" and "lots" could indicate that the legislature meant the
   words to be read separately, and, therefore, the proposed lot line revision
   could still satisfy the definition of subdivision by dividing the first prop-
   erty into a third part: this court concluded that the legislature intended
   the word "parts" to refer to separate but whole, not fractional, members
   of a tract of land, thus, when the word "parts" is read in light of its
   commonly approved usage and together with the definition of "resubdivi-
   sion" in § 8-18, its meaning is plain and unambiguous, and is to be read
   together with the word "lots" so as to clarify the latter's meaning.

Argued December 9, 2019—officially released July 21, 2020

*Procedural History*

Appeal from the decision of the defendant denying
the plaintiff's application for certain property line revi-
sions, brought to the Superior Court in the judicial dis-
trict of Fairfield, where the court, *Radcliffe, J.*, granted
the motion to intervene filed by the defendant Judith
Kurmay et al.; thereafter, the matter was tried to the

court, *Radcliffe, J.*; judgment dismissing the plaintiff's appeal, from which the plaintiff, on the granting of certification, appealed to this court; subsequently, this court granted the plaintiff's motion to substitute JRB Holding Co., LLC, as the plaintiff. *Reversed*; *judgment directed*.

*Stephen R. Bellis*, for the appellant (substitute plaintiff).

*Alexander J. Florek*, for the appellee (named defendant).

*Joseph A. Kubic*, for the appellees (defendant Judith Kurmay et al.).

*Opinion*

LAVERY, J. The plaintiff, 500 North Avenue, LLC, appeals from the judgment of the trial court dismissing its appeal from the decision of the defendant, the Planning Commission of the Town of Stratford (commission),[1] concluding that the plaintiff was required to file an application for subdivision approval in order to adjust the lot lines of two abutting properties that it owns by adding ten acres to one property and subtracting that acreage from the other. The plaintiff claims that the court improperly concluded that (1) its proposed boundary line revision of two adjacent lots constituted a subdivision under General Statutes § 8-18 and (2) a subdivision application was required because the proposed revision was more than a " 'minor' " adjustment. In response, the defendants argue that because the proposed boundary line revision would create a third part, it required subdivision approval. We agree with the plaintiff and, thus, reverse the judgment of the trial court.

The record and the court's memorandum of decision reveal the following facts and procedural history. The plaintiff is the owner of two adjacent properties in the town of Stratford (town). The first property is located at 795 James Farm Road and consists of fifteen acres of land. The second property is located at and known as Peters Lane and consists of ten acres of land. On or about March 24, 2017, the plaintiff submitted a Mylar map[2] of the two properties to the town's planning and zoning administrator, Jay Habansky, seeking a lot line adjustment. Specifically, the plaintiff sought to reduce the James Farm Road property from fifteen acres to 4.7 acres and to increase the Peters Lane property from ten acres to approximately twenty acres, thus, reconfiguring the properties.

On May 1, 2017, upon request from Habansky, Attorney John A. Florek[3] submitted a memorandum advising Habansky not to sign or approve the plaintiff's Mylar map. In the memorandum, Florek relied on language from *Goodridge* v. *Zoning Board of Appeals*, 58 Conn. App. 760, 765–66, 755 A.2d 329, cert. denied, 254 Conn. 930, 761 A.2d 753 (2000), in which this court stated: "A minor lot line adjustment between two existing lots, whereby no new lot is created, does not constitute a 'subdivision' as defined by § 8-18 and, thus, does not require municipal approval. . . . To accept every minor adjustment of property . . . as a 'subdivision' under § 8-18 would lead to a substantial increase in applications to municipal planning commissions and in land use appeals." On the basis of this language, Florek concluded that the plaintiff's proposal is a "much more drastic change" than the minor revision in *Goodridge* that did not require municipal approval and, therefore, recommended that Habansky refer the issue to the commission for its determination as to whether the bound-

ary line adjustment constituted a mere lot line revision or a subdivision.

In response to Florek's memorandum, on May 4, 2017, the plaintiff's counsel sent a letter to Habansky explaining that because there was no division of 795 James Farm Road or the Peters Lane property into three or more lots pursuant to § 8-18, there was no subdivision. The letter cited to *McCrann* v. *Town Plan & Zoning Commission*, 161 Conn. 65, 70, 282 A.2d 900 (1971), in which our Supreme Court stated that because "[t]he site in question was created by combining two lots to make one parcel . . . [t]here was no division of a tract into three or more parts or lots and in the absence of the statutory requirement there was no subdivision." Thereafter, Habansky referred the matter to the commission.

On May 16, 2017, the commission held an administrative hearing, in which it considered Florek's memorandum, the plaintiff's objection to Florek's memorandum, and a separate memorandum from Attorney Kurt M. Ahlberg that contained information regarding a prior cut[4] to 795 James Farm Road.[5] In Ahlberg's memorandum, he referenced the prior cut to 795 James Farm Road: "On August 29, 2003, Edward P. Colacurcio conveyed a 0.9197 acre parcel of this tract to Roger K. Colacurcio . . . . This property is now known as 875 James Farm Road. . . . [T]his is the only conveyance of any lot or part of the entire tract whatsoever from the contiguous [fifteen acre parcel known as 795 James Farm Road] since the adoption of the [s]ubdivision [r]egulations by the [t]own in 1956. By virtue of this 'first cut,' the entire [fifteen] acre tract was divided into two parts or lots," which became 795 James Farm Road and 875 James Farm Road. Relying on the recommendations from Florek and Ahlberg, the commission unanimously concluded that the Mylar map should be considered a subdivision "based on the facts that it creates a drastic change in the existing lots and [the lot line adjustment is] made for the purpose of development." The commission therefore concluded that an application for subdivision approval was necessary and denied the plaintiff's request for a lot line revision. On May 23, 2017, notice of the commission's decision was published in the Connecticut Post. The plaintiff thereafter appealed to the Superior Court pursuant to General Statutes § 8-8 (b).

After considering the briefs and arguments of the parties, the trial court issued a memorandum of decision on June 22, 2018. The court held that there was substantial evidence in the record to support the commission's decision that the 2003 conveyance, as described in Ahlberg's memorandum, constituted a "first cut" of 795 James Farm Road. As such, the court stated that the plaintiff's "[M]ylar map . . . represent[ed] a second division of 795 James Farm Road

. . . . Therefore, the reduction of the fifteen . . . acre parcel to 4.7 acres, is not subject to the 'first cut' exemption contained in [§] 8-18 . . . ." The court further held that the commission's decision that the Mylar map required subdivision approval was supported by substantial evidence in the record. Relying on the phrase "minor lot line adjustment" referenced in *Goodridge* v. *Zoning Board of Appeals*, supra, 58 Conn. App. 765–66, the court concluded: "The [M]ylar map filed by [the plaintiff] created no new lots, although it dramatically reconfigured existing parcels. Substantial evidence supports the conclusion that the map was filed, consistent with a desire to develop the 4.7 acre parcel. . . . The court is unable to find, as a matter of law, that a division of property which doubled the size of the Peters Lane parcel, while reducing 795 James Farm Road by ten . . . acres, represents a 'minor' revision."

On July 6, 2018, the plaintiff petitioned this court for certification to appeal, and the petition was granted on September 24, 2018. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the trial court improperly upheld the commission's decision by concluding that there was substantial evidence in the record to support the commission's finding that the plaintiff's proposed lot line adjustment of the 795 James Farm Road and Peters Lane properties constituted a subdivision for purposes of § 8-18. Specifically, the plaintiff argues that because no new lot was created from the boundary adjustment, subdivision approval was not necessary. We agree.

"Although we employ a deferential standard of review to the actions of zoning [commissions] . . . the issue raised here is one of statutory construction. Issues of statutory construction present questions of law, over which we exercise plenary review." (Citation omitted; internal quotation marks omitted.) *Benson* v. *Zoning Board of Appeals*, 89 Conn. App. 324, 329, 873 A.2d 1017 (2005); see *Clifford* v. *Planning & Zoning Commission*, 280 Conn. 434, 453, 908 A.2d 1049 (2006) (applying deferential standard of review to decision of zoning commission). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield

absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756, 900 A.2d 1 (2006).

The issue before this court requires us to interpret the statutory definition of subdivision. Section 8-18 defines a subdivision as "the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes, and includes resubdivision . . . ."

"In interpreting the meaning of the term 'subdivision' in § 8-18, we do not write on a clean slate. In *McCrann* v. *Town Plan & Zoning Commission*, [supra, 161 Conn. 70], [our Supreme Court] examined the meaning of the term 'subdivision' in § 8-18. . . . The court concluded first that the language of § 8-18 is clear and unambiguous. . . . The court then explained that, in order to constitute a subdivision, the clear language of the statute has two requirements: '(1) [t]he division of a tract or parcel of land into three or more parts or lots, and (2) for the purpose, whether immediate or future, of sale or building development.' " (Citations omitted.) *Cady* v. *Zoning Board of Appeals*, 330 Conn. 502, 510, 196 A.3d 315 (2018).

In *Cady*, our Supreme Court further interpreted the language of § 8-18. In that case, the defendant property owner proposed lot line revisions, seeking to reconfigure three lots on its property. Id., 506–507. The zoning enforcement officer concluded that "[t]he land comprising the current [three] lots was originally [four] lots . . . . [The three lots] were subject to a state taking for road improvements . . . . Therefore, as of the time of the filing of the subject [l]ot [l]ine [r]evision map, it is my opinion there were three preexisting lots . . . and that no subdivision was required . . . ." (Internal quotation marks omitted.) Id., 507–508. After appealing to the Zoning Board of Appeals of the Town of Burlington, which denied the appeal, the plaintiff filed an appeal with the Superior Court and alleged that the proposed lot line adjustments constituted a subdivision under § 8-18. Id., 508. The trial court agreed and reversed the decision of the board, holding that "a new subdivision was created because three new lots were created." (Internal quotation marks omitted.) Id. Thereafter, our Supreme Court reversed the judgment of the

trial court, holding that the "appropriate inquiry under § 8-18 is whether *one lot* has been divided into *three or more lots*." (Emphasis added.) Id., 514.

Because the present case involves the application of § 8-18, we are bound by our Supreme Court's interpretation of the language of that statute in *Cady*. We, therefore, must determine whether the plaintiff's proposed lot line revision divides one lot into three or more lots. In particular, we must determine whether the plaintiff's proposed lot line revision divides 795 James Farm Road into three or more lots. We conclude that it does not.

The following additional facts are relevant to the resolution of the issue presented. Florek, guided by Ahlberg's memorandum, concluded that 795 James Farm Road was "first cut" in 2003, thus leaving three abutting parcels of land, 795 James Farm Road, Peters Lane, and 875 James Farm Road. He further concluded that because the plaintiff's proposal sought to "severely change the character of the lots involved," subdivision approval was necessary. Specifically, Florek relied on language from *Goodridge*, concluding that the plaintiff's proposal was not "minor" and "constitute[d] more than a simple lot line revision." Florek further relied on *Stones Trail, LLC* v. *Zoning Board of Appeals*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-06-4010003-S (May 6, 2008), in which the court stated: "[W]here a boundary line adjustment is significant in size and made for the purpose of development, even where no additional lot is created, it does constitute a subdivision of property." (Internal quotation marks omitted.) Accordingly, Florek advised the commission to deny the plaintiff's proposal.[6]

At the administrative hearing, the commission was tasked with deciding whether "(1) an additional lot was or was not created; (2) if [the proposal] is simply a lot line revision; [and] (3) if [the proposal] is a subdivision that is created for the specific purpose of facilitating development." The commission relied on the case law cited in Florek's memorandum and concluded that the plaintiff's proposal should be considered a subdivision, and not a lot line adjustment. On appeal, the trial court upheld the commission's decision, concluding that, although the proposal created no new lot, it "dramatically reconfigured existing parcels," thus, amounting to more than a " 'minor' " revision.[7] The court held that "the [commission] was fully justified in concluding that the [M]ylar map constitutes a subdivision, within the meaning of [§] 8-18 . . . ."

The plaintiff claims that the trial court improperly interpreted the language of § 8-18 in upholding the commission's conclusion that subdivision approval was required for the plaintiff's proposed lot line revision. The principal issue, therefore, presents a question of law "turning upon the interpretation of statutes." (Internal quotation marks omitted.) *Smith* v. *Zoning Board*

*of Appeals*, 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994).

The trial court's conclusion that the plaintiff's proposed lot line revision met the definition of a subdivision set forth in § 8-18 was inconsistent with the language of the statute. *Cady* indicates that, in determining whether a lot line revision constitutes a subdivision, the question is whether one lot was divided into three or more lots. *Cady* v. *Zoning Board of Appeals*, supra, 330 Conn. 514. The defendants argue that because there was a "first cut" to 795 James Farm Road, the lot line revision would divide the property into a third part or lot. The defendants, however, are considering the proposed reconfiguration of the boundary lines of the property as constituting a division of 795 James Farm Road. No such division has occurred. In fact, the trial court, in its memorandum of decision, stated that "no new lots" were created; therefore, after the lot line revision, there remains the same number of lots, three, as existed before the revision, namely, 795 James Farm Road, Peters Lane, and 875 James Farm Road, which was created from the first cut of 795 James Farm Road. This first cut is the only division of 795 James Farm Road. We agree with the trial court that no new lots were created from the plaintiff's proposed lot line revision. Because there was not a second division of 795 James Farm Road that resulted in three or more parts or lots, however, the proposed lot line revision does not satisfy the definition of subdivision pursuant to § 8-18.

The commission asserts that *Cady* instructs this court that "[§] 8-18 . . . directs our attention to the original tract of land from which the initial division of the property was made." The commission argues that we must look to the configuration of 795 James Farm Road when the town adopted its planning and zoning regulations on February 1, 1956. Because the first cut of 795 James Farm Road took place after the adoption of the town's planning regulations, the commission contends that "any further division of 795 [James Farm Road] would require subdivision approval." We are unpersuaded.

We acknowledge that 795 James Farm Road was subject to a first cut in 2003. We conclude, however, that because the plaintiff's proposal does not divide 795 James Farm Road a second time, resulting in three or more parts or lots, the commission's decision that subdivision approval was required is contrary to the language of § 8-18. As the court properly indicated, there simply was no additional lot created. Three lots existed before the proposal and three lots remain. Accordingly, the plaintiff's proposed lot line revision does not constitute a subdivision under § 8-18.

II

The plaintiff next claims that the trial court improperly relied on language from *Goodridge* in upholding the commission's decision and concluding that subdivision approval was required because the lot line revision was more than "minor." Specifically, the plaintiff cites to *Cady*, to argue that "[our Supreme Court] found that nothing in the plain language of . . . § 8-18 indicates that the determination of whether a particular proposal constitutes a subdivision depends on the degree of the lot line adjustment." Judith Kurmay and Cathleen Martinez, the intervening defendants, however, attempt to distinguish the present case from *Cady*, stating that "[t]he application of *Cady* to this case is like comparing an apple to a pineapple." The commission likewise contends that because *Cady* involved land that had not been previously subject to a " 'first cut,' " the court's holding should not apply to the present case. We are not persuaded by the defendants' arguments.

*Cady* implicitly overruled this court's decision in *Goodridge* in regard to the subject matter of the size of a proposed lot line revision. In particular, our Supreme Court explained that the use of the phrase " 'minor lot line adjustment' " is not supported by the language of the statute. *Cady* v. *Zoning Board of Appeals*, supra, 330 Conn. 515. The court stated: "Nothing in the plain language of § 8-18 indicates that the determination of whether a particular proposal constitutes a 'subdivision' depends on the degree of the lot line adjustment. Indeed, § 8-18 does not address a lot line adjustment or the size of an adjustment at all; instead, it addresses 'the division of a tract or parcel of land . . . .' Similarly, § 8-18 does not address the creation of a new lot, but only the division into 'three or more parts . . . .' To be sure, the phrase 'division of *a* tract or parcel of land into *three* or more parts or lots' demonstrates that the creation of *one* new lot does not constitute a subdivision." (Emphasis in original; footnote omitted.) Id., 516–17.

In the present case, the trial court's conclusion that subdivision approval was required because the proposed lot line revision of 795 James Farm Road was "more than minor," was based on its reliance on the language of *Goodridge*. In light of the holding in *Cady*, however, we conclude that the trial court's reasoning is flawed. As *Cady* indicated, there is nothing in the language of § 8-18 addressing the degree of the lot line adjustment. The only relevant inquiry is whether the property was divided into three or more lots. The mere changing of lot lines or adding additional land to lots, no matter how sizeable, does not constitute a subdivision. It is well established that "a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court

has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) *Tuxis Ohr's Fuel, Inc.* v. *Administrator, Unemployment Compensation Act*, 127 Conn. App. 739, 744, 16 A.3d 777 (2011), aff'd, 309 Conn. 412, 72 A.3d 13 (2013).

Even though the proposed lot line adjustment in the present case includes a nearly ten acre change in the size of the two properties, the degree of a lot line adjustment is not determinative of the need for subdivision approval. As such, the trial court's reliance on the term "minor" was improper. Because we have determined that 795 James Farm Road has not been divided into three or more lots and no new lots will be created from the proposed lot line adjustment, we conclude that subdivision approval of the plaintiff's proposed lot line adjustment was not necessary.

### III

Kurmay and Martinez assert one final argument that we are compelled to address, namely, that the language of § 8-18 includes the terminology "parts or lots . . . ." They argue that, although "there may be the same number of [p]arcels before and after the proposed 'lot line adjustment' . . . 795 [James Farm Road] . . . would be divided into a third part. This third part . . . is . . . intended to be merged into the Peters Lane property. Neither 795 [James Farm Road] or Peters Lane [have] actually been subdivided into 'lots.' " At oral argument before this court, the defendant explained that, even if the property was not divided into three or more lots, the distinction in § 8-18 between "parts" and "lots" could indicate that the legislature meant the words to be read separately, and, therefore, the proposed lot line revision could still satisfy the definition of subdivision by dividing 795 James Farm Road into a third part. We disagree.

The determination of whether the word "parts" as used in § 8-18 indicates something different from a building lot requires the application of well established principles of statutory construction, which we previously set forth in part I of this opinion.

Although our Supreme Court in *McCrann* and *Cady* determined that the language of § 8-18 is clear and unambiguous, neither case analyzed the meaning of the phrase "parts or lots . . . ." We are therefore required to determine whether the plaintiff's proposed lot line revision creates multiple parts, as opposed to lots. With the principles of statutory construction in mind, we begin our analysis by examining the language of the statute.

Section 8-18 provides in relevant part that " 'subdivision' means the division of a tract or parcel of land into

three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes, and includes resubdivision; 'resubdivision' means a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on a such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map . . . . "

Section 8-18 does not define the word "parts" or the word "lots." Moreover, after thorough research, we have uncovered no appellate case law that has interpreted the word "parts," as used in § 8-18, to have a meaning that is separate and distinct from the word "lots." Our Supreme Court has held that "in the absence of a statutory definition, we turn to General Statutes § 1-1 (a), which provides in relevant part: 'In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language. . . .' To ascertain the commonly approved usage of a word, 'we look to the dictionary definition of the term.' . . . *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 690, 894 A.2d 919 (2006)." *Stone-Crete Construction, Inc.* v. *Eder*, 280 Conn. 672, 677–78, 911 A.2d 300 (2006). Taking into consideration that "[a] statute should be construed so that no word, phrase or clause will be rendered meaningless"; (internal quotation marks omitted) *Verrastro* v. *Sivertsen*, 188 Conn. 213, 221, 448 A.2d 1344 (1982); the use of the dictionary definition is appropriate where, as here, neither the word "parts" nor "lots" has been defined by the legislature.

Furthermore, "[t]he rule of [statutory] construction that the words in a statute must be construed according to their plain and ordinary meaning [is informed by] the doctrine of [in pari] materia, under which statutes [and statutory provisions] relating to the same subject matter may be looked to for guidance in reaching an understanding of the meaning of the statutory term." (Internal quotation marks omitted.) *State* v. *Pommer*, 110 Conn. App. 608, 616, 955 A.2d 637 (citing R. Williams, Jr., "Statutory Construction in Connecticut: An Overview and Analysis," 62 Conn. B.J. 313–14 (1988)), cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). We are further guided by the principle that "the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue,

but also to the broader statutory scheme to ensure the coherency of our construction. . . . [T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [nonaction] will have upon any one of them." (Internal quotation marks omitted.) *Stone-Crete Construction, Inc.* v. *Eder*, supra, 280 Conn. 678.

Merriam-Webster's Collegiate Dictionary defines the word "part" as "one of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the whole . . . one of the several or many equal units of which something is composed or into which it is divisible . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003), pp. 902–903.

Applying this definition and the canons of construction outlined in the preceding paragraph, we conclude that the legislature intended the word "parts" to refer to separate but whole, not fractional, members of a tract of land. Specifically, the purpose of the inclusion of "parts" is to elucidate the meaning of the word "lots" by clarifying that the type of lot referred to in § 8-18 is a piece of property, which comprises "one of . . . several or more . . . units" that together can constitute a whole. This inherent divisibility demonstrates that a part or lot of a piece of property can be separated from the whole and can take on its own independent existence. In turn, this independent existence of a lot can only be accomplished if the "units" of the whole property are a constituent part of a tract of land that has been divided so as to become a subdivision.

Our conclusion is further supported by the fact that, when creating the statutory definition of subdivision, the legislature included the definition of resubdivision in its meaning. In the definition of resubdivision, the legislature used only the words "lot," "lots," and "building lots" to impart the type of land that is to be considered in a resubdivision. There is no use of the word "parts." As highlighted above, this court has previously explained that "[s]tatutes should be read as to harmonize with each other, and not to conflict with each other." (Internal quotation marks omitted.) *Furhman* v. *Dept. of Transportation*, 33 Conn. App. 775, 778, 638 A.2d 1091 (1994). In light of the legislature's specific inclusion of the definition of resubdivision within the definition of subdivision and the fact that statutes should be read to harmonize with each other, we must presume that the legislature intended the two definitions to be read together and to be construed, wherever possible, to avoid conflict between them. Typically, " '[t]he use of the disjunctive 'or' between the two parts of the statute indicates a clear legislative intent of separability.' " *Bahre* v. *Hogbloom*, 162 Conn. 549, 557, 295 A.2d 547 (1972). Because Kurmay's and Martinez' interpretation of the definition of subdivision, which

includes the division of land into "parts" as well as "lots" and that the "or" is to be used disjunctively, would create a conflict with the definition of resubdivision, we conclude that their interpretation is not workable. In other words, we conclude that "or" is not meant to be used as a disjunctive conjunction, and, instead, the term "parts or" is intended to clarify the meaning of the word "lots," and the two words are meant to be read together.

Moreover, Kurmay's and Martinez' interpretation of the definition of subdivision is inconsistent with prior judicial interpretations of the statute. In *Cady* v. *Zoning Board of Appeals*, supra, 330 Conn. 514, our Supreme Court concluded that the "appropriate inquiry under § 8-18 is whether one *lot* has been divided into three or more *lots*." (Emphasis added.) The absence of the word "parts" in *Cady* is consistent with our understanding that the word is not meant to have a meaning that is separate and distinct from that of "lots."

As such, we conclude that when the word "parts," as used in the definition of subdivision pursuant to § 8-18, is read in light of its commonly approved usage and together with the definition of resubdivision, its meaning is plain and unambiguous because it is susceptible to only one reasonable interpretation. We conclude that the word "parts" is to be read together with the word "lots" so as to clarify the latter's meaning.

Lastly, the defendants argue that the proposed lot line revision was submitted solely for the purposes of development and, therefore, meets the definition of subdivision pursuant to § 8-18. The defendants, however, fail to recognize that, as stated in *McCrann*, to meet the statutory definition of a subdivision, we must first determine if there was a division of a tract or parcel of land into three or more parts or lots. *McCrann* v. *Town Plan & Zoning Commission*, supra, 161 Conn. 70. Next, we must determine whether this division was done for the purpose of development. Id. As we have concluded in parts I and II of this opinion, 795 James Farm Road has not been divided into three or more parts or lots. Because the first requirement of the statute was not met, an analysis as to whether the proposed lot line adjustment is being conducted for the purposes of development is not necessary. See id. (concluding that "[t]here was no division of a tract into three or more parts or lots and in the absence of this statutory requirement there was no subdivision").

The record reveals that the plaintiff's proposed lot line revision simply reconfigures two conforming lots into two differently shaped, yet conforming, lots. There is no division that results in the creation of three or more lots. Accordingly, we conclude that the trial court's judgment upholding the commission's decision requiring subdivision approval deviated from the plain language of § 8-18. We, therefore, reverse the judgment of

the trial court dismissing the plaintiff's appeal.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other judges concurred.

[1] On August 21, 2017, the court, *Radcliffe, J.*, granted a motion filed by Judith Kurmay and Cathleen Martinez to intervene as defendants. We refer in this opinion to Kurmay, Martinez, and the commission collectively as the defendants, and individually by name where necessary. After this appeal was filed, this court granted the plaintiff's motion to substitute JRB Holding Co., LLC, as the plaintiff. For ease of reference, we refer to 500 North Avenue, LLC, as the plaintiff in this opinion.

[2] "A Mylar map is a map prepared on a thin polyester film suitable for recording on the land records." *Torgerson* v. *Kenny*, 97 Conn. App. 609, 615 n.5, 905 A.2d 715 (2006), cert. denied, 281 Conn. 913, 916 A.2d 54 (2007).

[3] Florek is an assistant town attorney for the town.

[4] "Where a parcel had been previously divided into two pieces and one of them was conveyed to another owner, that was considered a first or 'free cut' of the original parcel so that a subsequent division of the remainder of it into two lots was a subdivision as defined in . . . § 8-18." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 10:9, p. 316. A "first cut" is also known as a prior cut.

[5] In 2016, the commission had requested that Ahlberg draft a memorandum and render an opinion "as to the title of certain real property known as 795 James Farm Road . . . as well as whether the proposed development of an approximately 3.7 acre parcel of this property which lies along James Farm Road constitutes a subdivision of this entire tract."

[6] The following colloquy transpired at the hearing before the commission:

"[Chairman Silhavey]: Okay. So is there one lot that has now become three?

"[Attorney Florek]: Well . . . that's for you to decide. I can tell you that as it exists right now subsequent to the subdivision regulations there is one lot that has at least become two, that and the remainder, which is [fifteen] acres, okay? Again, the issue whether this is a major revision so that you now have lots—you now have lots that were different, severely different than existed before. That's up to you to decide."

[7] The trial court's memorandum of decision was published on June 22, 2018. Our Supreme Court published its decision in *Cady* on December 11, 2018. As such, the trial court did not have the benefit of the analysis in *Cady* when making its decision.